United States Court of Appeals,

Fifth Circuit.

No. 96-40868.

UNITED STATES ex rel. James M. THOMPSON, Plaintiff-Appellant,

v.

COLUMBIA/HCA HEALTHCARE
CORPORATION, et al.,
Defendants-Appellees.

Oct. 23, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Relator, James M. Thompson, M.D., a physician in private practice in Corpus Christi, Texas, brought this *qui tam* action pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.,* against defendants Columbia/HCA Healthcare Corporation and certain affiliated entities (collectively, "Columbia/HCA") and Corpus Christi Bay Area Surgery, Ltd. The district court dismissed Thompson's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set out below, we affirm in part, vacate in part, and remand for further proceedings.

I.

In his second amended complaint, at issue in this appeal, Thompson alleged that defendants submitted false or fraudulent claims under the FCA by submitting Medicare claims for services

rendered in violation of the Medicare anti-kickback statute,[1] 42 U.S.C. § 1320a-7b, and two versions of a self-referral statute, 42 U.S.C. § 1395nn, commonly known as the "Stark" laws after the statute's congressional sponsor, United States Representative Fortney H. "Pete" Stark. He further alleged that defendants made false statements to obtain payment of false or fraudulent claims in violation of the FCA by falsely certifying in annual cost reports that the Medicare services identified therein were provided in

---

[1]Thompson alleged that defendants violated the Medicare anti-kickback statute by inducing physicians to refer Medicare patients to Columbia/HCA hospitals in the following ways:

> (1) Offering physicians preferential opportunities not available to the general public to obtain equity interests in Columbia/HCA healthcare operations through partnership or corporate structure arrangements;
>
> (2) Offering loans or assistance in obtaining loans to physicians to finance capital investments in equity interests in Columbia/HCA entities;
>
> (3) Making payments disguised as "consultation fees" to physicians in order to guarantee on a risk-free basis their capital investments in equity interests in Columbia/HCA entities;
>
> (4) Paying physicians "consultation fees," "rent" or other monies;
>
> (5) Providing physicians with free or reduced rent for office space near Columbia/HCA hospitals in facilities owned or operated by Columbia/HCA;
>
> (6) Offering physicians free or reduced-rate vacations and other recreational opportunities;
>
> (7) Offering physicians free or reduced-cost medical training;
>
> (8) Providing physicians with income guarantees; and
>
> (9) Granting physicians superior or exclusive rights to perform procedures in particular fields of practice.

2

compliance with the laws and regulations regarding the provision of healthcare services. Finally, Thompson alleged that defendants violated the FCA by submitting Medicare claims for medically unnecessary services.

The district court granted defendants' motions to dismiss Thompson's second amended complaint for failure to state a claim. The court held that Thompson's allegations that defendants submitted Medicare claims for services rendered in violation of the anti-kickback statute and the Stark laws were insufficient, by themselves, to state a claim for relief under the FCA. The court also held that Thompson's allegations that defendants falsely certified in annual cost reports that the Medicare services identified therein were provided in compliance with the laws and regulations regarding the provision of healthcare services were insufficient to state a claim for release under the FCA. The court concluded that these allegations were insufficient because Thompson had not alleged that defendants submitted false certifications to obtain payment of false or fraudulent claims, *i.e.,* claims or claim amounts that the government would not have paid but for the alleged fraud. Finally, the court held that Thompson's allegations that defendants submitted claims for medically unnecessary services were insufficient to state a claim because he failed to plead his allegations with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

## II.

We review a district court's ruling on a motion to dismiss

3

for failure to state a claim *de novo.* *Morin v. Caire,* 77 F.3d 116, 120 (5th Cir.1996). A district court may not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997). A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017 (5th Cir.1996).

The FCA provides, in relevant part:

(a) Liability for certain acts.—Any person who—

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval ...; [or]

> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government ...

\* \* \* \* \* \*

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....

31 U.S.C. § 3729(a)(1), (2).

A. *Thompson's Claims Predicated on Statutory Violations*

Thompson alleged that defendants violated the FCA by submitting Medicare claims for services rendered in violation of the Medicare anti-kickback statute and the Stark laws. The Medicare anti-kickback statute prohibits (1) the solicitation or receipt of remuneration in return for referrals of Medicare

patients, and (2) the offer or payment of remuneration to induce such referrals. 42 U.S.C. § 1320a-7b(b).

The first Stark law, commonly known as "Stark I," was in effect between January 1, 1992 and December 31, 1994. Stark I prohibited physicians from referring Medicare patients to an entity for clinical laboratory services if the referring physician had a nonexempt "financial relationship" with such entity. 42 U.S.C.A. § 1395nn(a)(1)(A) (West 1992). Stark I also prohibited the entity from presenting or causing to be presented a Medicare claim for services furnished pursuant to a prohibited referral. 42 U.S.C.A. § 1395nn(a)(1)(B) (West 1992). With certain exceptions, "financial relationship" was defined as (1) an ownership or investment interest in the entity, or (2) a compensation arrangement with the entity. 42 U.S.C.A. § 1395nn(a)(2) (West 1992). Stark I expressly prohibited payment of Medicare claims for services rendered in violation of its provisions. 42 U.S.C.A. § 1395nn(g)(1) (West 1992).

Stark II became effective January 1, 1995, and prohibits physicians from referring Medicare patients to an entity for certain "designated health services," including inpatient and outpatient hospital services, if the referring physician has a nonexempt "financial relationship" with such entity. 42 U.S.C. § 1395nn(a)(1), (h)(6). Like its predecessor, Stark II provides that the entity may not present or cause to be presented a Medicare claim for services furnished pursuant to a prohibited referral, and expressly prohibits payment of Medicare claims for services

5

rendered in violation of its provisions. 42 U.S.C. § 1395nn(a)(1), (g)(1).

We agree with the district court that claims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the FCA. In *United States ex rel. Weinberger v. Equifax, Inc.,* 557 F.2d 456, 460-61 (5th Cir.1977), we held that claims submitted by a government contractor who allegedly violated the Anti-Pinkerton Act[2] did not necessarily constitute false or fraudulent claims under the FCA. In so holding, we observed that the FCA is not an enforcement device for the Anti-Pinkerton Act. We recognized, however, that the FCA "interdicts material misrepresentations made to qualify for government privileges or services." *Id.* at 461.

The Ninth Circuit has taken a similar approach concerning the scope of the FCA. In *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1266 (9th Cir.1996), the court held that "[v]iolations of laws, rules, or regulations alone do not create a cause of action under the FCA." The court concluded, however, that false certifications of compliance create liability under the FCA when certification is a prerequisite to obtaining a government benefit.

Thus, where the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent

---

[2]The Anti-Pinkerton Act provides: "An individual employed by the Pinkerton Detective Agency, or similar organization, may not be employed by the Government of the United States...." 5 U.S.C. § 3108.

claim when he or she falsely certifies compliance with that statute or regulation.

Thompson alleged that, as a condition of their participation in the Medicare program, defendants were required to certify in annual cost reports that the services identified therein were provided in compliance with the laws and regulations regarding the provision of healthcare services. He further alleged that defendants falsely certified that the services identified in their annual cost reports were provided in compliance with such laws and regulations. Thus, Thompson fairly alleged that the government's payment of Medicare claims is conditioned upon certification of compliance with the laws and regulations regarding the provision of healthcare services, including the anti-kickback statute and the Stark laws, and that defendants submitted false claims by falsely certifying that the services identified in their annual cost reports were rendered in compliance with such laws and regulations.

Columbia/HCA argues that the certifications of compliance contained in annual cost reports are not a prerequisite to payment of Medicare claims because Medicare claims are submitted for payment shortly after services have been rendered and well before annual cost reports are filed. Thompson contends that such certifications are indeed a prerequisite to payment because the retention of any payment received prior to the submission of an annual cost report is conditioned on the certification of compliance contained therein. We are unable to determine from the record before us whether, or to what extent, payment for services

7

identified in defendants' annual cost reports was conditioned on defendants' certifications of compliance. We therefore deny defendants' 12(b)(6) motions as they relate to this issue and remand to the district court for further factual development.

Thompson also contends that, in any event, claims for services rendered in violation of the Stark laws are, in and of themselves, false or fraudulent claims under the FCA. Thompson bases his contention on provisions in the Stark laws expressly prohibiting payment for services rendered in violation of their terms. In holding that Thompson failed to allege a violation of the FCA, the district court did not specifically consider this contention. Because the district court must determine whether the government's payment of defendants' Medicare claims was conditioned on defendants' certifications of compliance in their annual cost reports, we will give the district court the opportunity to consider this argument on remand as well.

B. *Thompson's False Statement Claims*

As discussed above, the FCA imposes liability not only on any person who submits a false or fraudulent claim for payment, but also on any person who knowingly makes a false statement in order to get a false or fraudulent claim paid. *See* 31 U.S.C. § 3729(a)(2). If the district court determines on remand that claims for services rendered in violation of the Stark laws are, in and of themselves, false or fraudulent claims under the FCA, then the court should also consider whether Thompson has sufficiently alleged that defendants committed separate and independent

8

violations of the FCA by making false statements to obtain payment of false or fraudulent claims.

C. *Thompson's Claims Based on Medically Unnecessary Services*

Thompson alleged that "[i]n reasonable probability, based on statistical studies performed by the Government and others" approximately 40 percent of claims submitted by defendants for services rendered in violation of the anti-kickback statute or the Stark laws were for services that were not medically necessary. Thompson made no further allegations in support of his claim. The district court held that Thompson failed to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, which requires that all averments of fraud be pled with particularity. The court concluded that Thompson failed to meet the pleading requirements of Rule 9(b) because he did not identify any specific physicians who referred patients for medically unnecessary services or any specific claims for medically unnecessary services that were submitted by defendants.

Claims brought under the FCA must comply with Rule 9(b). *Gold v. Morrison-Knudsen Co.,* 68 F.3d 1475, 1476-77 (2d Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 1836, 134 L.Ed.2d 939 (1996). At a minimum, Rule 9(b) requires that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud. *Williams v. WMX Tech., Inc.,* 112 F.3d 175, 179 (5th Cir.1997). Thompson argues, however, that the pleading requirements of Rule 9(b) are relaxed where, as here, the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge. Although

9

we have held that fraud may be pled on information and belief under such circumstances, we have also warned that this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *See Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994). In addition, even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1279 n. 3 (D.C.Cir.1994); *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993).

In his complaint, Thompson provided no factual basis for his belief that defendants submitted claims for medically unnecessary services other than his reference to statistical studies. There is no indication, however, that these studies directly implicate defendants. Thompson's allegations, therefore, amount to nothing more than speculation, and thus fail to satisfy Rule 9(b).[3]

### III.

Defendants ask us to affirm parts of the district court's order of dismissal on grounds raised but not considered below. Although we may consider alternative grounds for upholding the district court's decision, *Henderson v. Century Fin. Co., Inc.,* 577 F.2d 997, 1002 n. 5 (5th Cir.1978), we decline to do so in this

---

[3]The district court declined to grant Thompson leave to amend his complaint to conform with the requirements of Rule 9(b) and entered judgment in favor of defendants on all claims against them. Thompson has not challenged the district court's decision in this regard on appeal, and therefore we do not review it. *See United States v. Bigler,* 817 F.2d 1139, 1140 (5th Cir.1987) (court will not consider issues not raised on appeal except those relating to jurisdiction).

case.

Accordingly, for the reasons set out above, we affirm the district court's order to the extent it dismisses Thompson's claims based on his allegations that defendants submitted claims for medically unnecessary services. We vacate the remainder of the order and remand for further proceedings consistent with this opinion.

AFFIRMED in part; VACATED and REMANDED in part.