**UNITED STATES of America ex rel. Paul G. MATHEWS**

v.

**HEALTHSOUTH CORPORATION**

No. CIV 99–0604.

United States District Court,
W.D. Louisiana,
Alexandria Division.

March 7, 2001.

Henry B. Bruser, III, G. Trippe Hawthorne, Gold Weems et al., Camille F. Gravel, Jr., Alexandria, LA, for Paul G. Mathews, plaintiffs.

Thomas C. Fox, Andrew L. Hurst, Scot T. Hasselman, Reed Smith et al., Washington, DC, L Traywick Duffie, W. Christopher Arbery, Hunton & Williams, Atlanta, GA, Paul G. Preston, Jeanne Roslyn Lemmon, Pamela J. Lormand, Preston & Cowan, New Orleans, LA, for Healthsouth Corp., defendants.

## MEMORANDUM RULING

LITTLE, Chief Judge.

Before this court is defendant Health-South Corporation's motion to dismiss the False Claims Act ("the FCA") claims under Federal Rules of Civil Procedure 9(b) and 12(b)(6) and to dismiss the Louisiana Whistleblower Protection Act claim. For the reasons that follow, defendant's motion is GRANTED as to the FCA claims, accordingly, the FCA claims are DISMISSED WITH PREJUDICE. Defendant's motion is DENIED as to the Louisiana state law claim.

### I. BACKGROUND

This action, filed originally on 1 April 1999, alleges that HealthSouth Corporation ("HealthSouth") submitted fraudulent claims with regard to services provided at its Sunrise Rehabilitation Hospital ("Sunrise") to the federal government as proscribed under 31 U.S.C. § 3729 (2000). It also asserts a claim under the Louisiana Whistleblower Protection Act, La.Rev. Stat. Ann. § 23:967 (West 2000), on behalf of plaintiff and relator Paul G. Mathews ("plaintiff"), a former executive employed by HealthSouth. Plaintiff was the Chief Executive Officer ("CEO") at one of HealthSouth's facilities, the Rehabilitation Hospital of Alexandria, located in Alexandria, Louisiana, from October 1997 through August 1998. Plaintiff had held the position of CEO at this facility since February 1996, prior to HealthSouth's 1997 acquisition of the hospital. Plaintiff's immediate predecessor in Alexandria was Kevin Conn ("Conn"). After leaving Alexandria, Conn became the CEO at Healthsouth's Sunrise facility in Sunrise, Florida. HealthSouth, a Delaware corporation, owns and operates approximately 132 rehabilitation hospitals and units. HealthSouth has made applications for payment to the United States for rehabilitative ser-

vices provided at Sunrise under the federal government's Medicare program.

Plaintiff served his initial complaint on the United States on 1 April 1999, in camera and under seal. On 29 February 2000, the United States declined to intervene following an eleven-month period of consideration, but retained its right to receive copies of all pleadings and motions. This court subsequently ordered that the Complaint be unsealed and served upon the defendant. On 6 June 2000, the Complaint, comprised of the initial Complaint, the First Supplemental and Restated Complaint, and Second Supplemental Amended and Restated Complaint, was served upon the defendant. On 12 October 2000, this court granted HealthSouth's motion to dismiss the FCA claims, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and also granted in part defendant's motion to dismiss plaintiff's state law claims. We concluded that plaintiff's failure: (1) to comply with the heightened pleading requirements of Rule 9(b), and (2) to demonstrate entitlement to a relaxed pleading standard, mandated dismissal of the FCA claims. We granted plaintiff twenty days within which to amend the defective pleading, and plaintiff timely filed the Third Amended and Restated Complaint with this court on 6 November 2000.

The Complaint[1] asserts that HealthSouth: (1) fraudulently certified that 75% of the patient population at Sunrise was comprised of individuals seeking treatment for specific delineated disorders ("the 75% rule") in 1994 and 1995 annual cost reports, see Compl. ¶ 13–22, 24–46, and (2) fraudulently certified that Sunrise was in compliance with Medicare rules and regulations despite failing to provide three hours of therapy each day to patients ("the three-hour rule") in 1996, 1997, 1998 and 1999 annual cost reports, see Compl. ¶ 23–46. These fraudulent certifications, plaintiff contends, enabled the Sunrise facility to be reimbursed for services as a prospective payment services ("PPS") exempt hospital, rather than on a PPS basis. See Compl. ¶ 1. PPS exempt facilities are reimbursed by the federal government's Medicare program at a level higher than PPS facilities. See Compl. ¶ 3.

Plaintiff also seeks damages under Louisiana's Whistleblower Protection Statute. Plaintiff contends that he was forced to resign from his position in Alexandria, Louisiana, after refusing to participate in HealthSouth's practice of operating its hospitals in violation of federal Medicare laws. See Compl. ¶ 47–54. Plaintiff seeks personal damages resulting from this resignation. See Compl. ¶ 69.

On 22 November 2000, HealthSouth filed the instant motion to dismiss, which plaintiff opposed. HealthSouth argues that the FCA claims must be dismissed for failure to state a claim under Rule 12(b)(6) and because the claims are not pled with particularity as required by Rule 9(b). See Def.'s Mem. at 6–21. It also moves to dismiss the remaining state law claim of wrongful termination, contending that the plaintiff failed to allege the statutory prerequisites for bringing such a claim. See Def.'s Mem. at 21–23.

## II. ANALYSIS

### A. Standard of Review

When considering a motion to dismiss, a court may not dismiss the plaintiff's claims unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. See *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247

---

1. All references to the "Complaint" herein refer to paragraphs in the Third Amended and Restated Complaint.

(5th Cir.1997). In addition, the court must accept as true all well-pleaded facts in the complaint and view them in the light most favorable to the plaintiff. *See Am. Waste & Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir. 1991). If material outside the pleadings is presented to and not excluded by the court, a motion to dismiss should be treated as a motion for summary judgment brought pursuant to Rule 56. *See* Fed. R.Civ.P. 12(b).

Both parties have submitted extrinsic evidence in the course of briefing the court on this Rule 12 motion. Although it is within our discretion to consider such evidence and convert this motion to a motion for summary judgment, we decline to do so. *See Underwood v. Hunter,* 604 F.2d 367, 369 (5th Cir.1979); *see generally* Charles Alan Wright & Arthur R. Miller, 5A *Federal Practice & Procedure* § 1366 (2d ed. 1990 & Supp.2000). Accordingly, we have not considered this material.

## B. The False Claims Act Claims

The FCA authorizes individuals to "bring a civil action for a violation of [the FCA] for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). The person must bring the action in the name of the government, and the person who brings the action is referred to as a "relator." This type of action is often referred to as a *"qui tam* action" because the plaintiff states that he sues *as well* for the state as for himself. The relator must serve the government with a copy of the complaint, which must be filed in camera and remain under seal for at least 60 days, during which time the government investigates the allegations brought by the relator. The government may seek an extension of the 60–day investigatory period upon a showing of good cause. 31 U.S.C. § 3730(b)(2), (3). At the end of that time period, the government will notify the court of whether it has decided to intervene in the action. If the government chooses not to intervene, the relator "shall have the right to conduct the action." *See* 31 U.S.C. § 3730(c)(3). Upon the government's request, the relator must continue to serve the government with all pleadings, and the government retains the right to intervene in the action at a later date upon a showing of good cause. *See id.* Whether or not the government intervenes, the relator remains entitled to a portion of any proceeds recovered. *See id.*

■ In order to state a claim under the FCA, the plaintiff must establish that the defendant made a false statement that was presented to the government in order to obtain a payment. The FCA is not designed to punish every type of fraud committed upon the government. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir.1999) (citing *United States v. McNinch,* 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958)). In order for a false statement to be actionable under the FCA, it must constitute a false or fraudulent claim upon the government fisc; liability attaches not to the underlying fraudulent activity or to the government's wrongful payment, but to the *claim* for payment. The Act states that a claim "includes any request or demand ... for money or property." 31 U.S.C. § 3729(c). A claim may also take the form of a false certification of compliance with a prerequisite to government benefits or payment. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 902 (5th Cir. 1997).

Plaintiff alleges that HealthSouth's certification that it met the requirements for PPS exempt status amounted to a false statement actionable under the False Claims Act. Specifically, plaintiff contends that HealthSouth (1) failed to ensure its compliance with "the 75% rule," and (2)

failed to comply with "the three-hour rule." We consider each of these contentions in turn.

*The 75% Rule*

■ Plaintiff asserts that Sunrise's "certifications for 1994 and 1995 were made in deliberate ignorance of *whether Sunrise met the 75% rule.*" Compl. at ¶ 37. Plaintiff argues that while the claim does not allege that Sunrise falsely certified compliance with the 75% rule, defendant's failure to ensure compliance amounted to the conduct of an "ostrich" defendant who fails to inquire about facts that would alert him to the presence of fraudulent or false claims. Pl.'s Opp. at 9 (citations omitted). Defendant contends that this claim must be dismissed because plaintiff has failed to "state a claim facially because the Relator does not allege that Sunrise violated the Rule." Def.'s Mem. at 7. Plaintiff argues that the allegation states a claim under the False Claims Act because the Act encompasses claims of this type, and directs the court's attention to *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776 (4th Cir. 1999).

■ Plaintiff misconstrues the teaching of *Harrison.* In *Harrison,* the United States Court of Appeals for the Fourth Circuit held that FCA liability attached despite the absence of falsity or fraud within the claim for payment itself. Because a false statement was made in the course of the greater transaction, which involved a call on the government fisc, the court concluded that the plaintiff had stated a claim under the FCA. *See id.* at 788. In *Harrison,* the actual claims submitted for payment were accurate, but the defendants made false statements prior to submission of the claim in order to receive government contracts. *See id.* The court concluded that the district court's narrow reading of term "false or fraudulent claim" was in error, and noted that the term should be "construed broadly." *Id.* It is to this language that plaintiff directs this court. As the *Harrison* court emphasized, however, "[t]he test for False Claims Act liability" requires that the plaintiff show "(1) ... a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money." *Id.*

■ In the instant case, plaintiff would have us conflate the first and second of these requirements. This we cannot do. Plaintiff is correct that the FCA does not absolve from liability a defendant who remains ignorant of fraud or falsity. At the threshold, however, is the requirement that the plaintiff allege a fraudulent course of conduct or falsity. At worst, plaintiff has alleged a negligent course of conduct, comprised of defendant's failure to monitor compliance with the 75% rule. But liability does not attach under the FCA for conduct amounting to mere negligence. To find that the plaintiff has stated a claim in the instant case could result in an absurdity, that is, liability for HealthSouth's failure to ensure compliance with the 75% rule *despite a later finding that the 75% rule was met.* Plaintiff's failure to allege either a fraudulent course of conduct or a false statement requires us to dismiss this claim.

*The Three–Hour Rule*

■ According to plaintiff, HealthSouth falsely certified its 1996, 1997, 1998, and 1999 annual cost reports because "Sunrise did not provide intensive rehabilitation as defined by Medicare regulations for each patient, Medicare and non-Medicare." Compl. ¶ 37. Plaintiff submits that "[m]edicare regulations and criteria require 'excluded rehabilitation hospitals' to provide to all patients intensive rehabilitation service, which is defined as a minimum of three hours of therapy a day, five

days a week." Compl. ¶ 15. Defendant asserts that this claim must be dismissed, because "intensive rehabilitative services" are not, and cannot, be defined solely as three hours of therapy, five days a week. Def.'s Mem. at 6–11. In addition, defendant notes that even if such a regulation were in place, it would only apply to 75% percent of "all patients." Because we agree with defendant, these claims are also dismissed.

■ The complaint does not refer to any statute or regulation defining "intensive rehabilitative services" in the manner urged by plaintiff. Indeed, as defendant noted in its memorandum in support of the instant motion, section 1801 of the Social Security Act prohibits federal interference with "the practice of medicine or the manner in which medical services are provided." 42 U.S.C. § 1395 (2000). While Medicare may set standards and guidelines with regard to reimbursable benefits and services, such guidelines do not have the force of law. *See Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99, 115 S.Ct. 1232, 1239, 131 L.Ed.2d 106 (1995) (observing that "[i]nterpretive rules do not ... have the force and effect of law"). Indeed, such a guideline could conflict with the mandate of section 1801. We decline to adopt the rigid and unsupported definition of "intensive rehabilitative services" contained within the Complaint. Indeed, in his memorandum of opposition to the instant motion, plaintiff acknowledges that "intensive rehabilitative services is not defined in Medicare statutes and regulations." Pl.'s Opp. at 21. Plaintiff has failed to allege a fraudulent course of conduct or falsity in connection with HealthSouth's certification of compliance in its 1996, 1997, 1998 and 1999 annual cost reports. Accordingly, these claims are dismissed.

## C. The Louisiana State Law Claim

■ Under the Louisiana Whistleblower Protection Act, it is unlawful for an employer to "take reprisal against an employee who in good faith, and after advising the employer of the violation of law .... [o]bjects to or refuses to participate in an employment act or practice that is in violation of law." La.Rev.Stat. Ann. § 23:967 (West 2000). Defendant asserts that this claim must be dismissed because plaintiff failed to advise HealthSouth of a violation of law, a statutory prerequisite for protection under the act. Because we find that the plaintiff has alleged facts sufficient to defeat a motion to dismiss, defendant's motion is denied.

Defendant directs the court's attention to *Loftice v. Mobil Oil Exploration & Prod. U.S., Inc.*, No. 99–1361, 1999 WL 744049 (E.D.La. Sept.22, 1999) as support for its argument that plaintiff failed to notify HealthSouth "management of an alleged violation of law, as required by the statute." In *Loftice*, the plaintiff's failure to allege that he advised the former employer defendant of a violation of law provided an alternative basis for the court's dismissal of the claim. In the instant case, plaintiff alleges that he "reminded" HealthSouth executives that he could not override medical decisions relating to admission, length of treatment and discharge. *See* Compl. ¶¶ 47–48. He further alleges that he refused directives by his supervisor to override discharge decisions made pursuant to Medicare regulations, and that part of his refusal included informing his supervisor that he was not a medical doctor and therefore was not allowed to influence the length of hospitalization for patients. *See* Compl. ¶ 48. Viewing these alleged facts in the light most favorable to the plaintiff, we conclude that they are sufficient to withstand the instant motion to dismiss.

### III. CONCLUSION

For the foregoing reasons, defendant HealthSouth's motion is GRANTED IN PART AND DENIED IN PART.