UNITED STATES of America
ex rel. Keith BAILEY

v.

ECTOR COUNTY HOSPITAL d/b/a Medical Center Hospital, Nam H. Kim, M.D., Shanti K. Neerukonda, M.D., Alan C. Leshnower, M.D., P.A., and George L. Alexander, M.D.

No. MMO–03–CV–183.

United States District Court,
W.D. Texas,
Midland–Odessa Division.

Aug. 31, 2004.

Gerald K. Fugit, Attorney at Law, Odessa, TX, for Keith Bailey.

Ronald C. Griffin, William Stacy Trotter, Shafer, Davis, et al, Odessa, TX, for Ector County Hospital District.

Nyria Melchor, Max Edwin Wright, The Wright Law Firm, P.C., Midland, TX, for NAM H. KIM, M.D.

Jack Q. Tidwell, Tidwell & Tidwell, LLP, Odessa, TX, for Shanti K. Neerukonda, Alan C. Leshnower, M.D., P.A. and George L. Alexander, M.D.

## ORDER GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

JUNELL, District Judge.

Before the court are the following motions: Defendant Ector County Hospital d/b/a Medical Center Hospital's Motion to Dismiss and Supplement to the Motion to Dismiss, filed June 8, 2004 and August 17, 2004; Plaintiff's Responses in Opposition to Defendant Medical Center Hospital's Motion and Supplement, filed June 28, 2004 and August 13, 2004; Defendant Medical Center Hospital's Reply to Plaintiff's Responses filed August 23, 2004; Defendant Nam Kim's Motion to Dismiss pursuant to 12(b)(6) and Supplement to Motion to Dismiss pursuant to 12(b)(6), filed June 8, 2004 and August 17, 2004; Plaintiff's Responses in Opposition to Defendant Nam Kim's Motion and Supplement, filed June 28, 2004 and August 13, 2004; Defendant Nam Kim's Reply to Plaintiff's Responses, filed August 20, 2004; Defendant Shanti K. Neerukonda and Alan C. Leshnower's Motion to Dismiss pursuant to 12(b)(6) and Supplement to Motion to Dismiss pursuant to 12(b)(6), filed June 10, 2004 and August 13, 2004; Plaintiff's Responses in Opposition to Defendant Shanti K. Neerukonda and Alan C. Leshnower's Motion to Dismiss and Supplement, filed June 28, 2004 and August 13, 2004; Defendant Shanti K. Neerukonda and Alan C. Leshnower's Reply to Plaintiff's Responses, filed August 23, 2004; Defendant George L. Alexander's Motion to Dismiss pursuant to 12(b)(6) and Supplement to Motion to Dismiss pursuant to 12(b)(6), filed June 14, 2004 and August 13, 2004; Plaintiff's Responses to Defendant George L. Alexander's Motion to Dismiss and Supplement, filed June 28, 2004 and August 13, 2004; and Defendant George L. Alexander's Reply to Plaintiff's Responses, filed August 23, 2004. After careful consideration of the Motions, Responses, oral argument, and relevant law, the Court is of the opinion that the Defendants' Motions should be GRANTED IN PART as summary judgment motions.

## BACKGROUND

Relator alleges that on October 4, 2003 he was taken to the emergency room at Medical Center Hospital for dizzy spells and brief loss of consciousness. In his Complaint, Relator sets forth in chronological order the examinations and tests he underwent, and the findings logged from these examinations and tests. Relator had open heart surgery. While on the table, Relator claims he had a heart attack. Relator was discharged on October 13, 2002. The discharge summary noted that coronary artery disease of the circumflex artery was awaiting angioplasty, which was performed at Medical Center Hospital on November 18, 2002. Relator was then discharged again on November 20, 2002. In April 2003, Relator alleges he was examined by Dr. Manohar Angirekula who found that Relator continued to suffer from renal artery stenosis. As such, a stint was placed in Relator's left renal artery.

Relator alleges the tests and medical procedures performed on him before his open heart surgery should have never occurred and that these tests were performed only to obtain money for Medicare/healthcare financial services. Further, Relator alleges Defendants failed to properly treat his renal artery stenosis and alleges the procedures were unnecessary and endangered his life.

The Defendants originally filed Motions to Dismiss under 12(b)(6) and 9(b). The Court held a hearing on July 26, 2004, where it ordered the Plaintiff to comply with Rule 9(b). Further, the Court noted at the hearing that the Plaintiff attached affidavits to his Responses to the Motions

to Dismiss which contained information outside the pleadings. Federal Rules of Civil Procedure 12(b) and (c) provide that if, on motion to dismiss under Rule 12(b)(6) or motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56. *See* FED. R. CIV. P. 12(b) and (c). The Court informed the parties that these matters presented by the Plaintiff were outside the pleadings and would not be excluded by this Court in its consideration of the Defendants' Motions. Thus, the Court informed the parties it would treat the Defendants' Motions as ones for summary judgment. The Court then gave all parties time to respond and reply to the Motions as summary judgment motions. The Court held a second hearing on the summary judgment motions on August 30, 2004.

## STANDARD OF REVIEW

Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir.1996). Further, the moving party has the burden of showing that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir.1995). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993). "If the moving party fails to meet this burden, the motion must be denied, regardless of the nonmovant's response." *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

If the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 n. 4 (5th Cir.1993); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Krim*, 989 F.2d at 1442 n. 4. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Factual disputes that are unnecessary or irrelevant will not be counted. *Id.* In considering a motion for summary judgment, the district court must view the evidence through the

prism of the substantive evidentiary burden. *Id.* at 254, 106 S.Ct. 2505.

■ All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. If the record, so illuminated, could not lead a rational trier of fact to find for the nonmovant, summary judgment is proper. *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993)(citing *Matsushita,* 475 U.S. at 577–78, 106 S.Ct. 1348). On the other hand, if the factfinder could reasonably find in the nonmovant's favor, summary judgment should be denied. *Id.* (citing *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505). Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that it would be prudent to proceed to trial. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## DISCUSSION

The Relator's complaint alleges violations of the False Claims Act as well as various state law theories.

## I. False Claims Act

The False Claims Act provides for restitution to the government of money taken by fraudulent means. *United States v. Hess,* 317 U.S. 537, 551, 63 S.Ct. 379, 87 L.Ed. 443 (1943). Liability under the False Claims Act occurs when a person or entity " ... (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or] (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31

U.S.C. § 3729(a)(irrelevant sections omitted). For purposes of the False Claims Act, "knowing" and "knowingly" mean that a person, with respect to information: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b). The False Claims Act does not, however, define "false or fraudulent."

■ A "claim" in the False Claims Act context consists of a request or demand on the government for money that induces the government to disburse funds or "otherwise suffer immediate financial detriment." *United States v. McNinch,* 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). Unless this element is present, actions do not constitute a cognizable false claims cause of action even if they involve "false" statements or unlawful conduct. *Costner v. URS Consultants, Inc.,* 153 F.3d 667, 677 (8th Cir.1998).

### A. Cognizable "Claim" Under the False Claims Act

Defendants argue Relator fails to allege a cognizable cause of action under the False Claims Act. Specifically, the Defendants argue and the Court agrees that the Relator's Complaint contains general and conclusory allegations that Defendants submitted false claims to Medicare/health care financial services, but it fails to provide the requisite particulars.

■ The complaint in a False Claims Act suit must fulfill the requirements of Rule 9(b). *See United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir.1999)(citing *United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997)). Rule 9(b) states that "[i]n all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of a mind of a person may be averred generally." FED. R. CIV. PROC. 9(b). To plead fraud with particularity a plaintiff must include the " 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.' " *Russell*, 193 F.3d at 308; *see also United States ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 329 (5th Cir.2003). At a minimum, Rule 9(b) requires that a relator "set forth the 'who, what, when, where, and how' of the alleged fraud." *Thompson*, 125 F.3d at 903. Even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief. *Id.*

In reviewing the record, the Relator has provided no factual basis for his belief that Defendants submitted claims for medically unnecessary services other than his conclusory statement that the services were performed only to obtain money from healthcare financial institutions. Further, the relator has not identified: 1) any specific individual who knowingly presented, or caused to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval; 2) any specific officer or employee of the of the United States Government who received a false or fraudulent claim for payment or approval from any individual associated with the Defendants; 3) any specific false or fraudulent information contained in any alleged claim for payment or approval; 4) the amount of the claim for payment or approval that was allegedly false or fraudulent; 5) any specific individual who knowingly made, used, or caused to be used any false record or statement in order to have same paid or approved by the government; and 6) when any actual improper claims were submitted to the Government. Thus,

Relator's allegations amount to nothing more than mere speculation and thus fail to present a cognizable claim under the False Claims Act.

## B. Implied Certification Claim

Alternatively, the Court will address the merits of the Defendants' Motions for Summary Judgment. Relator first argues there was an implied certification sent to the United States Government/Medicare by the Defendants. The "false certification theory" of False Claims Act liability is predicated on false certification of compliance with a federal statute, regulation, or contractual term that is a prerequisite to obtaining a government benefit. The Fifth Circuit has identified the two elements necessary to state a false certification cause of action: (1) defendant makes a knowingly false certification of compliance with a statute or regulation; and (2) the certification is a prerequisite to payment. *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 679 (5th Cir. 2002), reh'g en banc granted, 307 F.3d 352 (5th Cir.2002). The Fifth Circuit has not addressed whether it will recognize the "implied certification theory." *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 382 (5th Cir.2003). However, as the Fifth Circuit previously recognized, under either implied or express certification theories, the certification must be a prerequisite to receive the government benefit in order to be legally false. *United States ex rel. Coppock v. Northrop Grumman Corp.*, 2003 WL 21730668, at *11 (N.D.Tex. July 22, 2003); *see United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir.1997)(holding a claim under False Claims Act is "legally false" only where party affirmatively certifies compliance with statute or regulation as condition to

receiving governmental payment or property).

■ Relator fails to establish the first element that Defendants made a knowingly false certification of compliance with a statute or regulation. The summary judgment record does not establish that based upon any of the Defendants' acts, Defendants impliedly certified compliance. Therefore, this claim fails from the beginning. *See Southland Mgmt. Corp.*, 288 F.3d at 679. However, even if the first element had been met, the claim would still fail. The crucial question is whether the certification of compliance with a particular regulation or statute was a condition for payment by the government. *See id.; see also Thompson*, 125 F.3d at 902–03. Relator presents nothing establishing that Defendants made a false certification of compliance, either implied or express, as a condition of payment. *See Thompson*, 125 F.3d at 902–03. (holding no liability under False Claims Act unless certification prerequisite to payment). Therefore, there is no genuine issue of material fact regarding Relator's claim for implied false certification, and the Court grants summary judgment in favor of the Defendants.

## C. Quality of Care Claim

The Relator also argues the Defendants defrauded the Government and the Relator by performing unnecessary surgery in order to make a fee.

The False Claims Act was not designed for use as a blunt instrument to enforce compliance with all medical regulations—but rather only those regulations that are a precondition to payment—and to construe the impliedly false certification theory in an expansive fashion would improperly broaden the Act's reach. Moreover, a limited application of implied certification in the health care field reconciles, on the one hand, the need to enforce the Medicare statute with, on the other hand, the active role actors outside the federal government play in assuring that appropriate standards of medical care are met. Interests of federalism counsel that the regulation of health and safety matters is primarily, and historically, a matter of local concern.

*United States ex. rel. Mikes v. Straus*, 274 F.3d 687, 699–700 (2nd Cir.2001). Furthermore, "permitting *qui tam* plaintiffs to assert that defendants' quality of care failed to meet medical standards would promote federalization of medical malpractice, as the federal government or the *qui tam* relator would replace the aggrieved patient as plaintiff." *Id.* at 700 (internal citations omitted). Beyond that, the Second Circuit observes "the courts are not the best forum to resolve medical issues concerning levels of care. State, local or private medical agencies, boards and societies are better suited to monitor quality of care issues." *Id.*

For those reasons, the Second Circuit thinks

a medical provider should be found to have implicitly certified compliance with a particular rule as a condition of reimbursement in limited circumstances. Specifically, implied false certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies *expressly* states the provider must comply in order to be paid.

*Id.* Liability under the Act may properly be found therefore when a defendant submits a claim for reimbursement while knowing, as that term is defined by the Act, that payment expressly is precluded because of some noncompliance by the defendant. *Id.* However, the Second Circuit held that if a treatment is so deficient as to be worthless, then the defendant's claims would be false. *Id.* at 703.

In *United States v. NHC Healthcare Corp.*, 115 F.Supp.2d 1149 (W.D.Mo.2000), the Western District of Missouri held in order for the United States to prove it was fraudulently billed for the care given to two residents at issue in the lawsuit, it must demonstrate the patients were not provided the quality of care which promotes the maintenance and the enhancement of the quality of life. *Id.* at 1153. The court further found it would not find a cognizable claim under the False Claims Act if the United States simply disagreed with a reasonable medical care treatment administered by the Defendant. *Id.*

Both the *Straus* and *NHC* courts concluded the False Claims Act may properly be invoked if the defendant's services are so deficient as to be worthless. However, the courts also agreed the False Claims Act should not be used to call into question a health care provider's judgment regarding a specific course of treatment. Thus, these courts have limited the False Claims Act from becoming a federal malpractice statute. Robert Salcido, *The Government's Increasing use of False Claims Acts against the Health Care Industry*, 24 J. LEGAL MED. 457, 475 (2003).

■ Because the Fifth Circuit has not addressed this particular issue, this Court holds the False Claims Act should not be used to call into question a health care provider's judgment regarding a specific course of treatment. The Relator specifically pled the Defendants failed to properly treat the problem, which the Court construes as questioning a specific course of treatment. Although the Relator claims the services performed were unnecessary and endangered his life, the record does not show the Defendants' services were so deficient as to be worthless. Thus, the Court finds the Relator has not pled a cognizable claim under False Claims Act regarding his quality of care claim.

■ Further, as to Defendant Medical Center Hospital ("MCH"), the summary judgment evidence shows that, as a matter of law, MCH did not diagnose nor admit the Relator because only physicians are licensed to diagnose and treat illnesses. TEX. OCC. CODE ANN. § 151.002(12 Vernon 2004); TEX. HEALTH & SAFETY CODE ANN. § 241.003(8) & (11)(Vernon 2001). The summary judgment evidence further shows it is MCH's purpose to provide physical facilities and equipment to the physicians. The physicians in turn then diagnose patients because physicians, not the hospital, are licensed by the state of Texas to practice medicine. As to billing practices, the summary judgment evidence shows MCH bills for the use of the facilities. It is undisputed that Relator received a cardiac procedure at MCH. After the procedure, the evidence shows MCH billed for the use of the facilities. Therefore, Defendant MCH is entitled to judgment as a matter of law as the Relator's False Claims Act cause of action.

■ As to the remaining Physician Defendants, there is no evidence before this Court that shows the surgery and treatment of Relator was unnecessary and no evidence that this treatment was done by the Defendants to make a fee and defraud the Government. The only evidence before the Court on behalf of the Relator are the affidavits of the Relator and a nurse who are not qualified on the basis of any education, training or experience, to give an opinion concerning the reasonableness or necessity of medical treatment. Therefore, there is no genuine issue of material fact and Physician Defendants are entitled to summary judgment.

## II. State Law Claims

■ Relator has also asserted various state law claims against the Defendant MCH and the Physician Defendants.

However, the Court has ruled in favor of the Defendants and dismissed the federal claim. When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Guzzino v. Felterman*, 191 F.3d 588, 594–95 (5th Cir.1999); *Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir.1992). In making this decision, the Court should balance judicial economy, convenience and fairness to the parties, as well as the principles of federalism and comity. *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. Here, these factors weigh in favor of dismissal of the Relator's state law claims. Thus, the Court declines to exercise supplemental jurisdiction over the state law claims asserted against Defendant MCH[1] and Physician Defendants.

## CONCLUSION

Based on the above-stated reasons, the Court finds the Defendants are entitled to summary judgment on the Relator's federal claim. As to the Relator's state law claims, the Court declines to exercise supplemental jurisdiction of these claims. Accordingly,

It is **ORDERED** that Defendants' Motions for Summary Judgment are hereby **GRANTED IN PART** consistent with the above discussion.

It is **FURTHER ORDERED** that Relator's federal claim against Defendants be **DISMISSED WITH PREJUDICE.**

It is **FURTHER ORDERED** that Relator's state law claims against Defendants

be **DISMISSED WITHOUT PREJUDICE.**

---

1. In the original complaint, Relator asserted various state law claims against Defendant MCH. Defendant MCH then filed a Motion to Dismiss. The Court notes, in the Response to the Motion to Dismiss, Relator expressly abandoned his state law claims against Defendant MCH.