United States Court of Appeals
Fifth Circuit

**F I L E D**

November 29, 2005

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-41585

SEALED APPELLANT I,

Plaintiff-Appellant,

versus

SEALED APPELLEE I,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
(No. 1:02-CV-155)

Before BENAVIDES, STEWART, and OWEN Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

This appeal arises from a *qui tam* action alleging violations of and retaliatory discharge under the False Claims Act, 31 U.S.C. § 3729. The principal issues on appeal are whether the relator satisfied the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and whether the relator stated a claim for retaliatory discharge. The district court dismissed the claims for failure to plead with particularity pursuant to Rule 9(b) and failure to state a claim pursuant to Rule 12(b)(6). For the following reasons, we affirm.

---

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

I. FACTUAL AND PROCEDURAL BACKGROUND

Sealed Appellee I ("Appellee") is an ambulance service company. Sealed Appellant I ("Appellant") was originally hired by Appellee's parent company as Compliance Manager to oversee regulatory compliance in the eastern United States. Federal regulations require that an ambulance company obtain the patient's signature before the company can bill the government for its services. In his capacity as Compliance Manager, Appellant became aware of complaints about the lack of patient signatures from one of Appellee's billing supervisors and several billing clerks. In response, Appellant wrote a compliance intake form to his supervisor informing him of the billing clerks' complaints. He was later promoted to Director of Compliance for Appellee. In that capacity, Appellant conducted a company wide audit to evaluate the extent of the patient signature problem. This audit revealed that in several regions in the United States, a number of offices were noncompliant. Specifically, the audit revealed that in Kennesaw, Georgia, the best regional billing office, noncompliance in the patient signature area was thirty-four percent while the worst regional billing office, Portland, Oregon, was ninety-four percent noncompliant. After the auditor removed those files that had a "lifetime signature" from the noncompliant category, the noncompliance rate improved to between thirty-five and forty percent company wide. Appellant then used the data from the audit to extrapolate how much Appellee had billed the government and concluded that Appellee had falsely billed the government approximately $200 million annually.

In July 2001, Appellant reported the results of the audit in a memorandum addressed to Appellee's Chief Compliance Officer and distributed it to several of Appellee's executive officers. Appellant also gave a presentation about the problem at a compliance retreat in August 2001. On or about August 31, 2001, Appellee's supervisor called Appellant away from his office in Aurora,

2

Colorado, to a staff meeting in Arlington, Texas, but fired Appellant before the meeting began. Appellant was unable to retrieve from his office his personal effects or documentation that supported his allegations. Appellant contends that this was done to bar his access to the documents necessary to be more specific in his allegations.

Appellant subsequently filed a *qui tam* suit alleging violations of the FCA and retaliatory discharge. The government declined to intervene. Appellee filed a motion to dismiss for failure to state a claim. The district court granted Appellee's motion to dismiss as to Appellant's claims of violation of the FCA as well as his claim of retaliatory discharge. Appellant timely filed notice of appeal.[1]

## II. DISCUSSION

A.     Violation of the FCA

Claims brought under the FCA must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). *United States ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 328 (5th Cir. 2003). A dismissal for failure to meet the requirements of Rule 9(b) is a dismissal for failure to state a claim, thus review is de novo. *Id.* We also review a dismissal for failure to state a claim under Rule 12(b)(6) de novo. *Id.*

To satisfy Rule 9(b) the complaint must allege the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (internal quotations omitted) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d

---

[1]Appellee also filed a motion to extend the automatic sixty-day seal placed on the record, and the district court entered an order temporarily extending the seal. Because we conclude that the district court properly dismissed Appellant's claims, we need not reach Appellant's contention that the district court erred in granting Appellee's motion to continue the seal beyond the automatic sixty-day period.

175, 179 (5th Cir.1997)). Appellant alleged that Appellee violated the FCA by sending bills for ambulance runs representing that the patients' signatures were on file, when Appellee knew that the signatures were not on file. He further alleged that these violations occurred nationwide and cost the government approximately $200 million annually spanning a period of five years, "[f]rom 1999 to the present."

Appellant has failed to plead any particular facts showing that Appellee was aware of the actions of its employees and intentionally filed false claims with the government. The complaint alleges that when Appellant conducted training sessions with the billing clerks, they complained that they were required to check the box indicating the patient's signature was on file when they knew there was no signature on file. Appellant asserts that he did not name the individual billing clerks because he contends that seventy-five individual corporations perpetrated the fraud. The complaint alleges that Appellant told his supervisor about the billing clerks' complaints and that Appellee's vice president criticized Appellant for instructing the clerks not to bill without a signature. Thereafter, Appellant was promoted to Director of Compliance and, in that capacity, he conducted an audit and submitted the results in a memo to, inter alia, Appellee's corporate officers. These are the only allegations that Appellee was aware of the actions of its employees. The complaint includes no more than the conclusory assertions of Appellee's knowledge and intent to file fraudulent claims. *Cf. United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 454 (5th Cir. 2005) ("Williams' complaint fails to plead any particular facts showing that Bell Helicopter was aware of the actions of its employees, [and] that it had intentionally filed these false claims with the government . . . ."). Further, the complaint alleges that on or about August 31, 2001, Appellant was fired, but does not allege how Appellant knows that Appellee submitted false billing statements after that time.

4

The audit only spanned one year, thus the allegations of fraud outside of that time frame are based on Appellant's extrapolations and good faith belief; this is simply not sufficient under Rule 9(b). *See Columbia/HCA Healthcare*, 125 F.3d at 903 (rejecting relator's claim that there was reasonable probability based on statistical studies performed by the government, that forty percent of the claims submitted by the defendants violated the anti-kickback law or were not medically necessary).

The complaint does not identify a single false claim that was actually submitted to the government. Appellant contends that his complaint is "perfectly analogous" to the complaint held sufficient in *Benchmark Electronics, Inc. v. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003). To the contrary, the complaint in *Benchmark* referred to specific documents alleged to contain false or misleading statements, as well as the month and year in which the documents were sent, *see id.* at 724, whereas Appellant's complaint alleges the billing statements were sent from 1999 to the present and that they occurred nationwide and in the Port Arthur, Portland, and Kennesaw offices. He does not contend that all of the billing statements submitted from 1999 to the present contained false statements; instead he alleges that the audit revealed a noncompliance rate between thirty-five percent and forty-five percent. Nevertheless, the complaint does not identify particular invoices containing false statements by number, date, or otherwise. While we understand that Appellant's contention that he was prevented from reentering his office after Appellee terminated his employment, it defies credulity that he is unable to identify any details of a single false claim submitted to the government.

Appellant contends that he is entitled to a relaxed Rule 9(b) standard because the audit is the only evidence of Appellee's false statements and it is exclusively within Appellee's control. This court has stated that the Rule 9(b) standard may be relaxed when the facts relating to the alleged fraud are peculiarly in the defendant's control; however, a plaintiff is not entitled to the relaxed standard where

the information is available from another source or where the defendant fails to allege a factual basis for his beliefs. *See United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999); *Columbia/HCA Healthcare Corp.*, 125 F.3d at 903. Appellant has not alleged a sufficient factual basis for his beliefs, nor has he argued that he tried but failed to obtain the information. We are not persuaded by his argument that he could not obtain the information from the billing clerks. The rules of professional conduct prevent *counsel* from contacting persons represented by counsel but do not "prohibit communication between a lawyer's client and persons, organizations, or entities of government represented by counsel, as long as the lawyer does not cause or encourage the communication without the consent of the lawyer for the other party." Tex. Gov't Code Ann. art. 10, § 9, Rule 4.02 cmt. 2 (Vernon 2005). Thus, nothing prevented Appellant from contacting Appellee's employees on his own, whether before commencing the litigation or after. Accordingly, the district court properly granted Appellee's motion to dismiss Appellant's claim for violation of the FCA for failure to plead with particularity and failure to state a claim.

B.      Retaliatory Discharge

The district court dismissed Appellant's retaliatory discharge claim under Rule 12(b)(6) because it concluded he could not show that Appellee was aware that he was engaged in protected activity. Again, we review dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo. *Causey*, 394 F.3d at 288; *Doe*, 343 F.3d at 328. A district court may not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Doe*, 343 F.3d at 328 (quoting *Columbia/HCA Healthcare Corp.*, 125 F.3d at 901).

"The 'whistleblower' provision of the False Claims Act prevents the harassment, retaliation, or threatening of employees who assist in or bring *qui tam* actions." *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). Under the whistleblower provision of the FCA, Appellant was required to show that he engaged in protected activity, that Appellee knew he was engaged in protected activity, and that he was discharged because of it. *See id.*; 31 U.S.C. § 3730(h).

In his complaint, Appellant alleges he conducted the audit in his capacity as Director of Compliance. He also alleges that, in that capacity, he informed Appellee's chief compliance officer, as well as corporate managers, of the signature requirements and the results of his audit, and that he gave a presentation about the problem at the compliance retreat; however, he does not allege that he informed his supervisors that he was concerned about fraud. In *Robertson*, 32 F.3d at 952, this court concluded that the plaintiff could not show retaliatory discharge where his investigations were part of his job and he never characterized his concerns as involving illegal, unlawful, or false-claims investigations. Appellant does not allege that he expressed concerns to his supervisors outside of those that were part of his duties as Director of Compliance, nor does he allege that he engaged in any conduct inconsistent with his responsibilities as Director of Compliance such that management was on notice that he was engaged in protected activity. *See Robertson*, 32 F.3d at 952. Appellant has not alleged a sufficient factual basis from which we can infer that Appellee had knowledge that Appellant was engaged in protected activity or that he was fired because of such activity. Therefore, we agree with the district court's conclusion that Appellant failed to state a claim for retaliatory discharge.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Appellant's claims for failure to state a claim.