# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 3, 2013

No. 12-30656
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA, ex rel; DENT. T. NUNNALLY,

Plaintiff - Appellant

v.

WEST CALCASIEU CAMERON HOSPITAL,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
U.S.D.C. No. 2:08-CV-0371

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This is an appeal from a 12(b)(6) dismissal of a *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* and the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a–7b(b). Relator James Dent Nunnally brought this action against his former employer, West Calcasieu Cameron Hospital ("WCCH"). The district court found that the complaint lacked sufficient detail regarding the false claims actually presented to the Government and dismissed

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

for failure to plead fraud with particularity as required by FED. R. CIV. P. 9(b). For the reasons stated herein, we AFFIRM.

Nunnally filed suit in March 2008 under the *qui tam* provisions of the FCA.[1] The Government investigated Nunnally's allegations over a three-year period and eventually declined to intervene. Pursuant to *qui tam* procedure, the complaint was then unsealed and available for WCCH's review.

Nunnally alleges that WCCH violated the FCA and the AKS by implementing a scheme to defraud the Government whereby the hospital charged reduced test fees to physicians in return for the physician referring to WCCH all patients in need of laboratory tests, particularly those covered by Medicare. He alleges WCCH then would charge Medicare significantly higher fees than charged to non-Medicare patients for the same tests, thereby resulting in the Government paying thousands of "false claims" generated by the illegal inducements. WCCH moved to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), and for failure to plead fraud with the requisite particularity under Rule 9(b). The district court granted WCCH's motion.

We review a motion to dismiss under Rule 9(b) and Rule 12(b)(6) *de novo*, applying the same standards as the district court. *See Frank v. Delta Airlines, Inc.*, 314 F.3d 195, 197 (5th Cir. 2002) (Rule 12(b)(6)); *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993) (Rule 9(b)). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

---

[1] The FCA's *qui tam* provisions permit a private individual, as a relator, to sue on the United States' behalf to recover for false claims for payment submitted to the Government. 31 U.S.C. § 3730; *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).

No. 12-30656

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Claims brought under the FCA are fraud claims that must also comply with the supplemental pleading requirements of Rule 9(b), demanding that "a party must state with particularity the circumstances constituting fraud or mistake."[2] FED. R. CIV. P. 9(b); *see United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 468 (5th Cir. 2009). Traditionally, we have held that pleading fraud with particularity requires that "[a]t a minimum . . . a plaintiff [must] set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (internal citation omitted). In the context of the FCA, we have explained that Rule 9(b) is "context specific and flexible," and noted that a plaintiff may sufficiently state a claim with particularity "without including all the details of any single court-articulated standard—it depends on the elements of the claim in hand." *Grubbs*, 565 F.3d at 189-90.[3]

Nunnally argues that our decision in *Grubbs* absolves *qui tam* relators of the heightened pleading requirements under Rule 9(b) and in the FCA itself. To

---

[2] Rule 9(b)'s requirement for pleading with particularity provides a "screening function" to ensure that the case has not been brought for frivolous reasons. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). The heightened pleading standard for fraud claims supplies defendants with the information they need to prepare responses, prevents discovery intended as a mere fishing expedition, and protects the defendants' reputations from baseless allegations. *Id.*

[3] In *Grubbs*, we noted that the oft-quoted "time, place, contents, and identity" standard originated in common-law fraud and securities fraud cases, where that application of Rule 9(b) directly tracks the elements of those claims. 565 F.3d at 188. Given that the FCA does not include elements of reliance and damages, "the statute is remedial and exposes even unsuccessful false claims to liability." *Id.* at 189. Therefore, "a claim under the [FCA] and a claim under common law or securities fraud are not on the same plane in meeting the requirement of 'stat[ing] with particularity' the *contents of the fraudulent misrepresentation.*'" *Id.* (emphasis added). Nonetheless, the pleading standard for FCA claims remains higher than what is required under Rule 8 alone.

the contrary, *Grubbs* reaffirms the importance of Rule 9(b) in FCA claims, while explaining that a relator may demonstrate a strong inference of fraud without necessitating that the relator detail the particular bill. *See* 565 F.3d at 190. We established that a relator could, in some circumstances, satisfy Rule 9(b) by providing factual or statistical evidence to strengthen the inference of fraud beyond mere possibility, without necessarily providing details as to *each* false claim. *Id.* This standard nonetheless requires the relator to provide other reliable indications of fraud and to plead a level of detail that demonstrates that an alleged scheme likely resulted in bills submitted for government payment. *Id.* Significantly, the complaint in *Grubbs* rested on the relator's actual description of a solicitation by two of the defendants to the relator to participate in an elaborate scheme to defraud the government, the particulars of which were there alleged.

Nunnally's complaint, by contrast, is broad and sweeping, providing no indicia of any actual knowledge of any FCA-violating fraud.[4] A generous reading of his complaint discloses an allegation that WCCH engaged in a practice of making false certifications of compliance with the AKS. The AKS is a criminal statute prohibiting the knowing or willful offering to pay, or soliciting, any remuneration to induce the referral of an individual for items or services that

---

[4] The applicable version of the FCA provides, in relevant part, that:
. . . [A]ny person who–
(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
[. . .] is liable to the United States Government . . . .
31 U.S.C. § 3729(a)(1–3) (1994), *amended by* 31 U.S.C. § 3729(a)(1)(A–B). Portions of the FCA were amended by the Fraud Enforcement Recovery Act ("FERA") of 2009. Pub. L. No. 111–21, § 386, 123 Stat. 1617 (2009). The district court properly applied the pre-FERA version because Nunnally filed this suit in March 2008, before the date of FERA's enactment. *See United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 762–63 (S.D. Tex. 2010).

No. 12-30656

may be paid for by a federal health care program. *See* 42 U.S.C. § 1320a–7b(b)(1–2); *Thompson*, 125 F.3d at 901. A violation of the AKS can serve as the basis for a FCA claim when the Government has conditioned payment of a claim upon the claimant's certification of compliance with the statute, and the claimant falsely certifies compliance.[5] *See Thompson*, 125 F.3d at 902.

Nunnally alleges WCCH violated the AKS by inducing physicians to provide improper referrals for lab services. The elements of the AKS violation must also be pleaded with particularity under Rule 9(b), because they are brought as a FCA claim. *See Bennett*, 747 F. Supp. 2d at 760, 783–785. Nunnally's complaint merely offers sweeping and conclusory allegations of "verbal agreements" between WCCH and "various physicians," without a shred of detail or particularity. We are given no information on the contents of those agreements, the identity of any physicians, actual inducements, or improper referrals. The sole "specificity" in the complaint is an "example" of an agreement to charge physicians $3.60 for a blood test, while later charging Medicare $10.60 for the same test. This "example" is insufficient because it does not allege, nor reliably indicate, that the two differing pay scales constitute "remuneration" to the physicians. It does not even indicate that these amounts are real rather than hypothetical. The complaint does not specify who in particular was involved in this "agreement," or how it constituted an illegal kickback.

Moreover, actual inducement is an element of the AKS violation, *see* 42 U.S.C. § 1320a–7b(b)(1–2), and Nunnally must provide reliable indicia that there was a kickback provided in turn for the referral of patients. This requires pleading that WCCH knowingly paid remuneration to specific physicians in exchange for referrals. Nunnally's complaint fails to allege any particular

---

[5] The AKS provides no private right of action; therefore, a private plaintiff may not sue a health care provider under the AKS alone. *See* 42 U.S.C. § 1320a–7b(b)(1–2).

details of any actual referral by a physician who entered an agreement with WCCH, or even to offer a time period more distinguishing than "[s]ince approximately 1992 and continuing to date." The complaint merely states that "[r]elator estimates that during [sic] past six years [WCCH] has submitted thousands of such overstated claims . . . causing Medicare to pay in excess of $4,000,000,000."

Finally, Nunnally fails to allege with particularity an actual certification to the Government that was a prerequisite to obtaining the government benefit. *See Thompson*, 125 F.3d at 902. According to Nunnally's complaint, WCCH violated the AKS by "periodically either certif[ying] in writing or impliedly certif[ying] to the Medicare program that it complied with all of Medicare's program rules, regulations and laws applicable thereto." Nunnally's complaint does not identify a single claim submitted by WCCH for services rendered pursuant to an illegal referral, let alone one for which WCCH expressly certified its compliance with federal law.[6] Thus, even if we assume that Nunnally's allegations of remuneration are sufficient, Nunnally has pleaded no facts regarding actual Medicare referrals or the billing and payment services provided to any Medicare patient. There is no basis to infer from the complaint that WCCH expressly certified compliance with the AKS as a part of submitting

---

[6] Nunnally concedes in his brief that he has *no knowledge* of any expressed certification by WCCH, but maintains that his complaint establishes "implied" certification. The theory of implied certification "is that where the government pays funds to a party, and would not have paid those funds had it known of a violation of a law or regulation, the claim submitted for those funds contain[s] an implied certification of compliance with the law or regulation and [is] fraudulent." *United States ex rel. Pogue v. Diabetes Treatment Cntrs. of Am., Inc.*, 238 F. Supp. 2d 258, 264 (D.D.C. 2002) (citation omitted). Our circuit has never adopted implied certification as a theory of FCA liability. *See United States ex rel. Marcy v. Rowan Cos.,* 520 F.3d 384, 389 (5th Cir. 2008) (citing *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 381–82 (5th Cir. 2003)); *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 679 (5th Cir. 2003) (en banc) (Jones, J. concurring).

No. 12-30656

claims to the Government.    Nunnally's pleadings of an AKS violation are deficient and cannot serve as a basis for FCA liability.

Additionally, to the extent Nunnally brings separate claims under the FCA premised on presenting false claims, § 3729(a)(1), or making false records, § 3729(a)(2), separate from the alleged AKS violation, he again has failed to plead with the requisite particularity as required by *Grubbs*.[7]

Nunnally's wholly generalized allegations of false claims presented to the Government do not "alleg[e] *particular* details of a scheme" (emphasis added) and are not "paired with reliable indicia that lead to a strong inference that [false] claims were actually submitted." *See Grubbs*, 565 F.3d at 190.  We held in *Grubbs* that the contents of a false claim need not always be presented under this subsection because, given that the Government need not rely on or be damaged by the false claim, "the contents of the bill are less significant." *Id.* at 189.  This does not absolve Nunnally of the burden of otherwise sufficiently pleading the time, place, or identity details of the traditional standard, in order to effectuate Rule 9(b)'s function of fair notice and protection from frivolous suits. *See id.* at 190.  Nunnally's allegations of a scheme to submit fraudulent claims are entirely conclusory, do not offer factual information with sufficient indicia of reliability, and do not demonstrate a strong inference that the claims were presented to the Government in violation of § 3729(a)(1).

Further, § 3729(a)(2) "requires [] that a defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid by the Government." *Id.* at 192.  "[T]he recording of a false record, when it is made with the requisite intent, is enough to satisfy the statute." *Id.*  In *Grubbs*, the relator alleged several specific incidents where doctors admitted to "writ[ing] notes" concerning physician visits that did not actually take place. *Id.*  Nunnally's

---

[7] Nunnally failed to invoke a particular subsection of the FCA in his complaint.

complaint does not contain any detail of comparable particularity.  He merely alleges there was "written and/or implied certification to the Medicare program that it was in compliance with all of the Medicare's program rules."  He points to no specific instance of such a record or statement.  As Nunnally has not met his burden under Rule 9(b), his claim was properly dismissed.

For the reasons stated above, we AFFIRM.