Richard **KOESLER** and San Juana Koesler, Plaintiffs,

v.

**BENEFICIAL FINANCE I, INC.,** Successor By Merger To Benefecial Texas, Inc.; **Caliber Home Loans, Inc.; U.S. Bank Trust, N.A.,** as Trustee of **LSF8 Master Participation Trust; Wells Fargo Delaware Trust Company, N.A.,** as Trustee for Vericrest Opportunity Loan Trust 2013 NLP2; and **Vericrest Opportunity Loan Trust 2014 NPL2,** Defendants.

**EP–16–CV–138–PRM**

United States District Court, W.D. Texas, El Paso Division.

Signed 10/12/2016

876

Carmen Elena Rodriguez, Attorney at Law, El Paso, TX, for Plaintiff.

Bryan Harris Hall, Beck & Hall, P.C., El Paso, TX, Steven T. Holmes, McGlinchey Stafford, P.L.L.C., Dallas, TX, Jason Levi Sanders, Robert T. Mowrey, Christopher Michael Boeck, Locke Lord L.L.P., Dallas, TX, Victor M. Firth, El Paso, TX, Edward DeVere Bunn, Jr., Firth Johnston Bunn Kerr, P.C., El Paso, TX, for Defendant.

## MEMORANDUM OPINION AND OR-DER GRANTING IN PART AND DENYING IN PART DEFEN-DANTS' MOTIONS TO DISMISS

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered the following motions filed in the above-captioned cause:

- Defendants Caliber Home Loans, Inc., ("Caliber"), U.S. Bank Trust, N.A., as trustee for LSF8 Master Participation Trust, Wells Fargo Delaware Trust Company, N.A., as trustee for Vericrest Opportunity Loan Trust 2013 NPL2, and Vericrest Opportunity Loan Trust 2014 NPL2's (collectively referred to as "Caliber Defendants") "Motion to Dismiss and Brief in Support" (ECF No. 14) [hereinafter "Caliber Defendants' First Motion"], filed on July 6, 2016;

- Defendant Beneficial Financial I, Inc.'s, ("Beneficial") "Motion to Dismiss Plaintiff's Complaint and Its Memorandum of Law in Support of its Motion to Dismiss" (ECF No. 15) [hereinafter "Defendant Beneficial's First Motion"], filed on July 6, 2016;

- Plaintiffs' "Response to Beneficial's Motion to Dismiss and to Caliber Defendants' Motion to Dismiss" (ECF No. 19) [hereinafter "Plaintiffs' First Response"], filed on July 21, 2016;

- Caliber Defendants' "Motion to Dismiss Plaintiffs' Complaint Filed July 20, 2016 and Brief in Support" (ECF No. 20) [hereinafter "Caliber Defendants' Second Motion"], filed on August 3, 2016;

- Beneficial's "Motion to Dismiss Plaintiff's Complaint and Its Memorandum in Support of its Motion to Dismiss" (ECF No. 21) [hereinafter "Defendant Beneficial's Second Motion"], filed on August 3, 2016; and

- Plaintiffs' "Response to Defendant Beneficial's and Caliber Defendants' Second Motion to Dismiss and Motion for Leave to Amend" (ECF No. 23) [hereinafter "Plaintiffs' Second Response"], filed on August 15, 2016.

After due consideration, the Court is of the opinion that Defendants' second set of motions to dismiss should be granted in part

and denied in part for the reasons set forth below.

## I. PROCEDURAL BACKGROUND AND DEFENDANTS' REQUEST TO STRIKE PLAINTIFFS' AMENDED COMPLAINT

■ This case revolves around a dispute regarding a home equity loan. As a preliminary matter, the Court must address Defendants' request to strike Plaintiffs' "Amended Complaint Fair Debt Collection Practices Act, Truth in Lending Act and Pendant State Claims" (ECF No. 18) [hereinafter "Amended Complaint"], filed on July 20, 2016. For the reasons discussed below, the Court concludes that Plaintiffs' Amended Complaint should not be struck.

Plaintiffs originally filed the instant action in state court. Defendant Caliber then removed the case on April 22, 2016, on the basis of federal question jurisdiction. Notice of Removal 1, 3, Apr. 22, 2016, ECF No. 1 [hereinafter "Notice of Removal"]. In accordance with the Court's "Standing Order to Replead in Removed Cases" (ECF No. 3) [hereinafter "Standing Order"], filed on April 25, 2016, Plaintiffs filed their "Complaint in Case Removed from State Court for Violations of Fair Debt Collection Practices Act, Real Estate Settlement Procedures Act, Truth in Lending Act and Pendant State Claims" (ECF No. 11) [hereinafter "Original Complaint"] on June 15, 2016.

The Caliber Defendants and Defendant Beneficial subsequently filed their first set of motions to dismiss Plaintiffs' Original Complaint. See Caliber Defs. First Mot; Def. Beneficial's First Mot. As a result, Plaintiffs amended their Original Complaint and filed their First Response. See Am. Compl. Fair Debt Collection Practices Act, Truth in Lending Act and Pendent State Claims, July 20, 2016, ECF No. 18 [hereinafter "Amended Complaint"]. Plaintiffs' Amended Complaint differs from their Original Complaint in that it does not contain any Real Estate Settlement Procedures Act, statutory fraud, or fraudulent inducement claims as their Original Complaint did and provides more factual details. Compare Original Compl. with Am. Compl. Thus, in their First Response, Plaintiffs argue that their Amended Complaint addresses the deficiencies that Defendant Beneficial and the Caliber Defendants raise in their first set of motions to dismiss. First Resp. 4–8.

The Caliber Defendants and Defendant Beneficial thereafter filed their second set of motions to dismiss. See Caliber Defs.' Second Mot.; Def. Beneficial's Second Mot. In their second set of motions to dismiss, the Caliber Defendants and Defendant Beneficial argue that their first set of motions to dismiss should be granted and that Plaintiffs' Amended Complaint should be struck because it was filed without leave of court or Defendants'. consent in violation of Federal Rule of Civil Procedure 15(a)(2). See Caliber Defs.' Second Mot. 2; Def. Beneficial's Second Mot. 5. In the alternative, the Caliber Defendants and Defendant Beneficial argue that, should the Court accept Plaintiffs' Amended Complaint, the Court should nevertheless dismiss it because it is still deficient pursuant to the federal pleading standard. Caliber Defs.' Second Mot. 2; Def. Beneficial's Second Mot. 5.

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), "[a] party may amend its pleading once as a matter of course within … 21 days after serving it, or … 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) … whichever is earlier." "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court

should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Before filing their Original and Amended Complaints in federal court, Plaintiffs had previously filed their original petition and four subsequent amended petitions in state court. Notice of Removal Ex. A. Therefore, Defendant Beneficial and the Caliber Defendants contend that Plaintiffs had already amended their complaint several times and were required to seek leave or obtain Defendants' consent prior to filing their Amended Complaint. Def. Beneficial's Second Mot. 5; Caliber Defs.' Second Mot. 2.[1]

■ "A case removed from state court ... comes into the federal system in the same condition in which it left the state system." *Matter of Meyerland Co.*, 960 F.2d 512, 520 (5th Cir. 1992). "The pleadings as already filed stand as if they had been filed in federal court." *Murray v. Ford Motor Co.*, 770 F.2d 461, 464 (5th Cir. 1985). Given that Plaintiffs had previously amended their complaint four times in the instant action, it is understandable why Defendants now assert that they should have sought leave of Court or Defendants' consent prior to amending their complaint. *See Lee v. Wells Fargo Bank, N.A.*, No. CIV.A. H–11–1334, 2012 WL 6132510, at *1–2 (S.D. Tex. Dec. 10, 2012) (similarly finding that plaintiff should have sought leave of court prior to filing amended complaint where plaintiff previously amended petition in state court); *Manzano v. Metlife Bank N.A.*, 2011 WL 2080249, at *3 (E.D. Cal. May 25, 2011) ("Because plaintiff filed her First Amend-

ed Complaint in state court prior to removal to this court, plaintiff already amended her pleading once as a matter of course. Thus, she could not properly file the [second amended complaint] without first obtaining leave of court.").

However, the Court will nevertheless consider Plaintiffs' Amended Complaint as properly filed because the Court would have granted leave upon Plaintiffs' request and because Defendants would not be prejudiced:

> some courts have held ... that an untimely amended pleading served without judicial permission may be considered properly introduced when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change.

6 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1484 (3d ed.) (collecting cases).

While the Fifth Circuit has held that, normally, "failing to request leave from the court when leave is required .... results in an amended complaint having no legal effect," it has also recognized the exception discussed by Professors Wright and Miller. *See U.S. ex rel. Mathews v. Health-South Corp.*, 332 F.3d 293, 295 (5th Cir. 2003) (recognizing this exception but holding that it did not apply where the defendant would be prejudiced by the amended complaint because it would cause the defendant to lose its statute of limitations defense).[2]

---

**1.** The Court's Standing Order adds an additional wrinkle to this analysis because it required that Plaintiffs file a complaint in federal court that comported with the federal pleading standard. Pursuant to the Standing Order, Plaintiffs were not required to seek the Court's leave or obtain Defendants' consent

prior file their Original Complaint, but rather were required to do so.

**2.** In the instant case, the Court would have granted leave for Plaintiffs to amend their Original Complaint had Plaintiffs so requested because (1) Rule 15(a) provides that the Court "should freely give leave when justice

Consequently, the Court finds that it is more procedurally expedient to consider the Amended Complaint filed, rather than strike it and then grant leave to file another complaint that raises the exact same issues. Significantly, the parties would be in the same position regardless of which procedure the Court uses. *See U.S. ex rel. Mathews*, 332 F.3d at 296–97 (holding similarly). Accordingly, the Court denies Defendants' request to strike Plaintiffs' Amended Complaint.

## II. FACTUAL BACKGROUND

Plaintiffs provide the following factual allegations in their Amended Complaint. Plaintiffs co-owned a residence in El Paso, Texas; they obtained a mortgage loan from Defendant Beneficial, which was secured by the residence. Am. Compl. 4. In March of 2006, Plaintiffs refinanced their mortgage loan: "Plaintiffs borrowed $5,644.83 at an interest rate of 9.5% through an equity loan obtained by refinancing an existing mortgage loan with Defendant Beneficial." *Id.* As a result, Plaintiffs allege that "[t]he new loan amount became $55,994.94." *Id.*

Plaintiffs thereafter began making payments to Defendant Beneficial of $603.08 per month from April 2006 until February 2009, when Plaintiff Koesler received correspondence from Hudson & Keyse, L.L.C., a debt collector, "purportedly attempting to collect on the Beneficial loan." *Id.* at 5. The correspondence contained the mortgage loan account number and listed Defendant Beneficial as the original creditor. *Id.* The correspondence also stated that Hudson & Keyse would "settle the ... account" for $23,345.00 with monthly payments of $100.00. *Id.* at Ex. A. Through his appointed fiduciary,[3] Plaintiff Richard Koesler paid approximately $2,400.00 until he was no longer able to process payments through his banking institution, First Light Federal Credit Union ("First Light"). *See Id.* at 5. First Light gave him notice that the "payee with the nickname Beneficial, ha[d] been deleted" because it "was associated with an excluded merchant." *Id.* at Ex. B.

Then, in January of 2011, "Plaintiff began receiving telephone calls from the third-party collection agency DRS Bonded Collection Systems ["DRS"] regarding the Beneficial account." *Id.* at 5. "The collection agent represented that [Plaintiff Rich-

---

so requires" and (2) the amendment was made within the Scheduling Order's deadline for filing motions to amend or supplement pleadings. *See* Fed. R. Civ. P. 15(a); Scheduling Order 2, June 22, 2016, ECF No. 13; *see also Degruy v. Wade*, 586 Fed.Appx. 652, 655 (5th Cir. 2014) ("A motion to amend under Rule 15(a) ... permit[s] liberal amendment to facilitate determination of claims on the merits, imposing serious restriction on the judge's discretion to deny the motion. Absent a strong declared reason for the denial, a reviewing court will hold the denial of a Rule 15(a) motion to be an abuse of discretion.") (alteration in original) (internal quotation marks and citations omitted). Additionally, Defendants would not be prejudiced by the amendment. Ironically, Defendants would actually be benefited in two ways: (1) Plaintiffs' Amended Complaint does not include several

of the claims they asserted in their Original Complaint, which allows Defendants to focus on fewer claims, *compare* Original Compl. (asserting Texas Business and Commerce Code Statutory Fraud claims and Real Estate Settlement Practices Act Claims) *with* Am. Compl. (omitting these claims), and (2) because Plaintiffs provide additional factual support for previously asserted claims, Defendants are in a better position to respond to Plaintiffs' allegations and are better informed on how to proceed during the course of litigation.

3. Plaintiff Richard Koesler is a veteran who is disabled. The Department of Veterans Affairs ("VA") appointed him a "Legal Custodian and Payee" to administer his VA funds. Am. Compl. 5.

ard] Koesler could pay off his delinquent Beneficial mortgage account if he immediately paid the lump sum amount of $17,863.50." *Id.* Plaintiff Richard Koesler's VA fiduciary assisted him in paying the lump sum of $17,863.50. *Id.* A copy of a "Payment Receipt" referencing Beneficial as a client was faxed to Plaintiff Richard Koesler. *Id.* at 5, Ex. C.

Plaintiffs allege that Defendant Beneficial "commenced collection actions against Plaintiffs without regard to Plaintiffs' assertions and their documentation ... that they had paid the amount requested to Beneficial representatives." *Id.* at 6. Then, on June 14, 2013, Defendant Beneficial filed an "Application for Expedited Order Allowing Foreclosure." *Id.* The application for foreclosure was dismissed, however, after Plaintiffs filed an action for declaratory relief on December 30, 2013, seeking "a resolution to the delinquent status of their loan account, to recover or to receive credit for amounts paid and not credited." *Id.*

Plaintiffs further allege that while their action was pending against Defendant Beneficial, they began receiving notices from both Defendant Beneficial and Defendant Caliber regarding the sale of their mortgage loan note. *Id.* First, Defendant Caliber sent Plaintiffs a "Notice of Sale of Ownership of Mortgage Loan" on January 9, 2014, which stated that the loan had been sold to LSF8 Master Participation Trust ("LSF8") on December 20, 2013. *Id.* at Ex. F [hereinafter "Defendant Caliber's First Notice"]. Defendant Caliber's First Notice also stated that the sale of Plaintiffs' mortgage loan did not affect any term or condition or the servicing of the loan and that they should direct any communication regarding the loan to Defendant Caliber as servicer. *Id.* Yet, Plaintiffs allege that, at this point, they were not familiar with Defendant Caliber and were

not aware that it was the new servicing company for their mortgage loan. *Id.*

Then, on January 16, 2014, Defendant Beneficial sent Plaintiffs a letter stating that as of February 1, 2014, the servicing of the loan would transfer to Defendant Caliber but "nothing else about the mortgage loan would change." *Id.* at Ex. E [hereinafter "Defendant Beneficial's Notice"]. Plaintiffs allege that Defendant Beneficial's Notice contradicted Defendant Caliber's First Notice, which stated that Defendant Caliber was already the servicer and which stated that LSF8 was the new owner of the mortgage loan. *See id.* at 6–7.

On June 8, 2015, a law firm representing Defendant Caliber sent Plaintiffs a letter stating that it was initiating legal proceedings on behalf of LSF8 in connection with Plaintiffs' mortgage loan. *Id.* at Ex. F [hereinafter "Defendant Caliber's Second Notice"]. Plaintiffs allege that they "have never refused to pay their mortgage loan and in a showing of good faith," deposited $24,000 with the El Paso County District Clerk pending the resolution of this dispute. *Id.* at 7, Ex. J.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted." In determining whether a plaintiff states a valid claim, a court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *González v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)) (internal quotation marks omitted).

In considering a motion pursuant to Rule 12(b)(6), a district court's review "is limited to the complaint, any documents attached to the complaint, and any docu-

ments attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

In terms of substance, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading that offers mere "'labels and conclusions' ... will not do," especially when it simply tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (second alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955).

## IV. ANALYSIS

### A. Fair Debt Collection Practices Act Claims

Plaintiffs allege that Defendants violated § 1692g and § 1692e of the Fair Debt Collection Practices Act ("FDCPA") through the actions they undertook as detailed in Section III *supra.*

The FDCPA is a sub-chapter of the Consumer Credit Protection Act intended to protect debtors from misleading and abusive debt-collection practices; accordingly, it "subjects a *debt collector* to civil liability for failure to comply with any of its provisions." *Wagstaff v. U.S. Dept. of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007) (citing 15 U.S.C. § 1692k(a)) (emphasis

added). The FDCPA defines a "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another ....

§ 1692a(6).

The FDCPA specifically excludes from its definition of debt collector a person "collecting or attempting to collect any debt owed .... [that] was originated by such person; [or] concerns a debt which was not in default at the time it was obtained by such person." § 1692(a)(6)(F). Thus, "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *see also Montgomery v. Wells Fargo Bank, N.A.*, 459 Fed.Appx. 424, 428 n.1 (5th Cir. 2012) ("[M]ortgage lenders are not 'debt collectors' within the meaning of the FDCPA."); *Howard v. CitiMortgage, Inc.*, No. 1:13cv543–KS–MTP, 2014 WL 6802550, at *2 (S.D. Miss. Dec. 2, 2014).

Hence, "[i]n determining whether a defendant is a debt collector ... under the FDCPA, the court's sole inquiry is 'whether the debt was in default at the time it was acquired by the defendant.'" *Clark v. Pinnacle Credit Servs., LLC*, 697 F.Supp.2d 995, 998–99 (N.D. Ill. 2010) (quoting *Ruth v. Triumph P'ships*, 577 F.3d 790, 796–97 (7th Cir. 2009)).

#### 1. Defendant Beneficial

In the instant action, Plaintiffs allege that Defendant Beneficial was the original mortgage loan lender. Am. Compl. 4. Because Defendant Beneficial is not a

"debt collector" within the meaning of the FDCPA, Plaintiffs have failed to establish any plausible basis of recovery against Defendant Beneficial for their FDCPA claims. *See Perry*, 756 F.2d at 1208. Thus, the Court finds that Plaintiffs' FDCPA claims against Defendant Beneficial should be dismissed.

### 2. The Caliber Defendants

■ In contrast, the Court finds that Plaintiffs' FDCPA claims against Defendant Caliber should not be dismissed.

The Caliber Defendants argue that Plaintiffs fail to allege any facts demonstrating that any of them are debt collectors as defined by the FDCPA. Caliber Defs.' Second Mot. 11. The Court disagrees; Plaintiffs allege the following facts suggesting that Defendant Caliber is a debt collector:

- "Defendant Caliber is a 'special servicer' of residential mortgage loans [ ] that … specializes in handling *delinquent* and *defaulted* mortgage loans and advertises itself as such, in order to obtain 'special servicing' business."
- "[Defendant] Caliber regularly acquires loans that are *delinquent* or in default at the time of such acquisition."
- "[Defendant] Caliber uses the mails and telephone system to collect such debts."

Am. Compl. 2 (emphasis added).

The Caliber Defendants further argue that "Plaintiffs have pleaded no facts to support a finding that the loan was in default at the time it was assigned to *LSF8*." Caliber Defs.' Second Mot. 11 (emphasis added). However, the date that LSF8 acquired the loan is inapposite because Plaintiffs have not alleged that LSF8, as owner of the loan, attempted to collect on the debt. Instead, Plaintiffs allege that Defendant Caliber, as the servicing company, did. *See* Am. Compl. 6–7. Thus, the relevant inquiry is whether the mortgage loan was in default at the time that Defendant Caliber began servicing it.

Plaintiffs allege that Defendant Beneficial began collection actions against them by filing an Application for Expedited Order Allowing Foreclosure on June 14, 2013—indicating that the loan may have been in default at that time. *Id.* at 6. Defendant Caliber subsequently began servicing the mortgage loan on February 1, 2014. *Id.* The status of Plaintiffs' loan on this date is unclear from Plaintiffs' allegations; it may still have been in default when Defendant Caliber began servicing it—if so, Defendant Caliber would be a debt collector subject to liability pursuant to the FDCPA. *See Perry*, 756 F.2d at 1208.

The Court cannot resolve this issue on a motion to dismiss, and consequently will not dismiss Plaintiffs FDCPA claims against Defendant Caliber on this ground. The Court will proceed to the merits of Plaintiffs' FDCPA claims against Defendant Caliber. *See Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F.Supp.2d 516, 524 (E.D. La. 2009) ("If [the defendant mortgage servicing company] took the mortgage for servicing before [the plaintiff] was in default, it is not a debt collector subject to the FDCPA …. If it took the mortgage after [the plaintiff's] default, it would be a debt collector. The Court cannot resolve this issue on a motion to dismiss.").

#### a. Section 1692g Claims

■ Section 1692g of the FDCPA requires that debt collectors provide consumers with a written notice of the amount of debt and name of the creditor to whom the debt is owed within five days of its initial communication with the consumer in con-

nection with the collection of any debt. § 1692g(a)(1)–(2); *see also Peter v. GC Servs. L.P.*, 310 F.3d 344, 348 (5th Cir. 2002). "This required notice is often referred to as the 'validation notice.' " *Garcia–Contreras v. Brock & Scott, P.L.L.C.*, 775 F.Supp.2d 808, 812 (M.D.N.C. 2011). The validation notice must also contain the following information:

- A statement that the debt will be assumed to be valid unless the consumer disputes it within thirty days after receipt of the notice;

- A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt is disputed, the debt collector will obtain verification of the debt and will mail the verification to the consumer; and

- A statement that the debt collector will provide the consumer with the name and address of the original creditor if different from the current creditor upon the consumer's written request within the thirty-day period.

§ 1692g.

Plaintiffs allege that Defendant Caliber violated § 1692g by failing to provide them with a "Notice of debt." Am. Compl. 9. While Plaintiffs' reference to a "notice of debt," is vague and ambiguous, Plaintiffs clarify in their Second Response that Defendant Caliber "fail[ed] to provide the proper validation notice within 5 days of its initial communication." Second Resp. 10; *see Pegram v. Herdrich*, 530 U.S. 211, 230, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ("Though this case involves a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ... we may use [the plaintiff's brief] to clarify allegations in her complaint whose meaning is unclear."); *Shillingford v. Rolly Marine Serv., Inc.*, No. 14–CIV–61936, 2014 WL 6682477, at *1 (S.D. Fla. Nov. 25, 2014) ("The Court

has considered additional facts in [the] [p]laintiff's [r]esponse to the extent they clarify allegations in the [c]omplaint.").

Specifically, Plaintiffs allege that Defendant Caliber's First Notice informed Plaintiffs that their loan had been sold to LSF8 Master Participation but stated that all payments should continue to be made to Defendant Caliber as servicer. Am. Compl. 6, Ex. D. Plaintiffs assert that they had not heard of Defendant Caliber prior to this First Notice. *Id.* at 6. Consequently, construing Plaintiffs' allegations in the light most favorable to them, Defendant Caliber's First Notice was its initial communication with Plaintiffs in connection with their mortgage loan. *See* Am. Compl. 6. Yet, Plaintiffs allege that Defendant Caliber's First Notice "failed to state the amount of debt." *Id.* at 9.

Moreover, Plaintiffs attach Defendant Caliber's First Notice to their Complaint and it does not contain any of the information § 1692g requires. See *id.* at Ex. D. Specifically, it does not contain a statement informing Plaintiffs that the debt would be presumed valid unless they disputed it within thirty days of receiving the notice, it does not state that Defendant Caliber would verify the debt if Plaintiffs disputed it, and it did not inform Plaintiffs that Defendant Caliber would provide them with the name and address of the original creditor if they so requested. *See id.*

Despite Plaintiffs' allegations, the Caliber Defendants do not address Plaintiffs § 1692g claims.

The Court is of the opinion that Plaintiffs' allegation that Defendant Caliber failed to provide them with the proper validation notice, along with Defendant Caliber's First Notice itself, provides a sufficient factual basis at this preliminary stage of the action to support Plaintiffs'

§ 1692g claims. "Factual development will be necessary to determine whether [Defendant Caliber's First Notice] was [actually Defendant Caliber's] initial communication with [Plaintiffs] and whether the required information was sent to [Plaintiffs] within five days." *See Castrillo*, 670 F.Supp.2d at 524 (similarly denying motion to dismiss the plaintiff's FDCPA § 1692g claims).

### b. Section 1692e Claims

■ Section 1692e of the FDCPA prohibits "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." Accordingly, § 1692e provides a non-exhaustive list of prohibited acts, including the false representation of "the character, amount, or legal status of any debt."

Plaintiffs allege that "Defendant Caliber sent an 'Informational Statement' that failed to disclose the correct status and amount of the debt." Am. Compl. 10, Ex. H. Plaintiffs further assert that Defendant Caliber provided conflicting statements regarding the amount due on the loan. *Id.* at 7. First, Plaintiffs point to Defendant Caliber's Second Notice, dated June 8, 2015, which indicates that "[t]he amount of debt as of the date of th[e] notice, according to the records of the Mortgage Servicer, is $ 32,578.99." Am. Compl. Ex. H, at 1. Plaintiffs next point to Defendant Caliber's Informational Statement, dated July 3, 2015, which reflects that the outstanding principal due on the loan was $ 48,030.70. *Id.* at Ex. H, at 1. Finally, Plaintiffs highlight the fact that a "Payoff Statement Form" from Defendant Caliber asserts that the total amount due on the loan is $72,349.69. Am. Compl. Ex. I, at 2.

The Caliber Defendants do not address the apparent discrepancy between Defendant Caliber's Second Notice and their Informational Statement in their Second Motion. Instead, the Caliber Defendants solely addresses the allegedly conflicting statements in the Informational Statement and Payoff Statement Form. Caliber Defs.' Second Mot. 10–11.

Specifically, the Caliber Defendants argue that the amounts mentioned in the Informational Statement and Payoff Statement Form differ because the amount presented in the Informational Statement concerns the unpaid principal balance while the amount provided in the Payoff Statement Form is the total amount due on the loan: "As is clearly indicated in Exhibit I to Plaintiffs' Complaint, the referenced payoff balance includes the principal balance but also includes accrued interest and incurred fees." *Id.* at 10–11. Consequently, the Caliber Defendants argue that "[i]t should be no surprise that these two numbers differ, as the first number is but one component of the second." *Id.* at 10.

The Caliber Defendants are correct in asserting that the amounts provided in the Informational Statement and Payoff Statement Form do not necessarily conflict, and therefore Plaintiffs' allegations regarding these two statements are not sufficient to support their § 1692e claims.

However, the Court finds that Plaintiffs' allegations regarding the apparent discrepancy between Defendant Caliber's Second Notice and the Informational Statement are sufficient to support their § 1692e claims. Viewed in the light most favorable to Plaintiffs, it is possible that either the representation in Defendant Caliber's Second Notice that the total amount due on the loan was $32,578.99, or the representation in the Informational Statement, sent just twenty-five days later, that the unpaid principal on the loan was $48,030.70, may be a false representation in violation of § 1692e. Moreover, the Caliber Defendants do not address this apparent discrepancy in their Second Response.

Hence, taking Plaintiffs' allegations as true, and construing those allegations in the light most favorable to them, the Court finds that Plaintiffs have sufficiently stated an FDCPA § 1692e claim against Defendant Caliber.

## B. Truth in Lending Act Claims ("TILA")

Plaintiffs also allege that the Caliber Defendants and Defendant Beneficial violated TILA through the conduct described in Section III *supra. See* Am. Compl. 10–11.

■ "The TILA is a federal consumer protection statute that provides consumers with a cause of action against creditors that fail to make required disclosures." *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 186 (S.D. Tex. 2007). TILA provides a one-year statute of limitations: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of occurrence of the violation." 15 U.S.C. § 1640(e). "The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations." *Moor v. Travelers. Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986) (internal citations and quotation marks omitted); *see also Williams*, 504 F.Supp.2d at 186 (citing *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984)); *In re Meyer*, 379 B.R. 529, 550 (Bankr. E.D. Pa. 2007) ("Because the disclosures are required to be made before the credit is extended (*see* 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(b)), the violation occurs when the loan is made."). "The credit transaction is consummated at the moment a contractual relationship is created between a creditor and a [consumer]." *Moor*, 784 F.2d at 633.

■ The Caliber Defendants and Defendant Beneficial argue that Plaintiffs' TILA claims are barred by its one-year statute of limitations. The Court agrees. *See* Caliber Defs.' Second Mot. 12; Def. Beneficial's Second Mot. 9–10. Plaintiffs allege that the loan that is the subject of this action was executed on March 17, 2006. Am. Compl. 4. Thus, Plaintiffs' TILA claims are nine years past the statute of limitations deadline. Yet, Plaintiffs argue that the conduct which forms the basis of their TILA claims—the Defendant Beneficial's alleged violations—occurred on January 16, 2014: "Plaintiffs claim against Defendant Beneficial is based on the representation made in its January 16, 2014, notice of servicing . . . ." Second Resp. 10. Even if the statute of limitations did not begin running until January 16, 2014, Plaintiffs' claims would still be barred by the one year statute of limitations, as Plaintiffs did not assert their TILA claims against Defendants until April 18, 2016. *See* Notice of Removal Ex. A.

Nevertheless, Plaintiffs argue that their TILA claims should be tolled because of the "confusion" created by Defendant Beneficial's January 2014 notice. Second Resp. 11. Defendant Beneficial's January 2014 notice stated that Defendant Caliber would be the new servicer of Plaintiffs' mortgage loan after January 31, 2014, and that all payments on the mortgage loan should be made to Defendant Caliber from that date forward. Am. Compl. Ex. E. The January 2014 notice also stated that "[n]o thing else about [Plaintiffs'] mortgage loan [would] change." *Id.* Plaintiffs allege that it was unclear from the January 2014 notice that Defendant Caliber would "no longer have anything to do with the mortgage account." Second Resp. 11. That is, Plaintiffs allege that the "notice does not state that the relationship with Beneficial [was] terminated." *Id.* Thus, Plaintiffs allege that "[t]here appears to be an intentional at-

tempt at obfuscation of the timing of the transfer authority and obligations among the different Defendant entities." *Id.*

In *Moor*, the Fifth Circuit considered and rejected the plaintiff's similar argument that his TILA claims should be tolled:

> We are not persuaded by [the plaintiff's] argument that the limitations period should not run until a reasonable person would have been put on notice of the facts constituting the action, and that this did not occur at the time of the consummation of the transaction. To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct.

*Moor*, 784 F.2d 632 at 633 (internal citations omitted). Here, Plaintiffs fail to assert that Defendants concealed any conduct or that Plaintiffs acted with diligence to discover the alleged violations. Contrary to Plaintiffs' argument that Defendant Caliber's January 2014 notice created confusion and was an intentional attempt to "obfuscate" the timing of the transfer of the loan, the January 2014 notice explicitly states that Defendant Caliber would be the new servicer of Plaintiffs mortgage loan and that Defendant Beneficial would no longer be servicing the loan. Am. Compl. Ex. E. The Court finds that the January 2014 notice is not confusing, does not indicate that any of the defendants concealed any information from Plaintiffs, and does not create the exceptional circumstances necessary to justify tolling of Plaintiffs' TILA claims. As a result, the Court concludes that Plaintiffs' TILA claims should be dismissed with prejudice as time-barred.

## C. Fraud

Pursuant to Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." "Rule 9(b)'s requirement for pleading with particularity provides a 'screening function' to ensure that the case has not been brought for frivolous reasons." *U.S. ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 Fed.Appx. 890, 892 n.2 (5th Cir. 2013). The Fifth Circuit has "[t]raditionally ... held that pleading fraud with particularity requires that '[a]t a minimum ... a plaintiff [must] set forth the 'who, what, when, where, and how' of the alleged fraud.'" *Id.* at 892 (alterations in original).

To plead a fraud claim in Texas, a plaintiff must allege facts that support the following elements: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) the speaker knew the representation was false when he made it or he made the representation recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

"A principal is liable for the fraudulent acts and misrepresentations of its authorized agent, even though the principal had no knowledge of the fraud and did not consent to it, whether or not the principal derives a benefit from it." *III Forks Real Estate, L.P. v. Cohen*, 228 S.W.3d 810, 814 (Tex. App.–Dallas 2007, no pet.). "In Texas, agency is a mixed question of law and fact." *Allamon v. Acuity Specialty Prods., Inc.*, 877 F.Supp.2d 498, 509 (E.D. Tex. 2012) (citing *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1295–96

(5th Cir. 1994)); *see also* 3 C.J.S. *Agency* § 608 ("Sometimes the existence of a relationship of agency is regarded as a mixed question of law and fact") (collecting cases). Consequently, "[t]he question of whether a principal-agent relationship exists under *established* facts is a question of law for the court." *First Nat. Acceptance Co. v. Bishop,* 187 S.W.3d 710, 714 (Tex. App.–Chorpus Christi–Edinburg 2006, no pet.) (emphasis added).

### 1. Defendant Beneficial

█ In their Amended Complaint, Plaintiffs allege that Hudson & Keyse and DRS were Defendant Beneficial's agents; Plaintiffs further allege that Defendant Beneficial, through these agents, made material representations alleging that payment to them constituted payment to Beneficial and that payment of a certain amount would settle the mortgage loan account. Am. Compl. 5–8. Plaintiffs provide a 2009 letter from Hudson & Keyse, containing Defendant Beneficial's name as the original creditor, providing that balance on the loan, and stating that Plaintiffs could settle the account by paying a sum of $23,345.00. *Id.* at Ex. A. Plaintiffs further allege that, through the VA fiduciary, they made several payments to Hudson & Keyse totaling $2,400, until they received a statement from First Light informing them that payments could no longer be processed. *Id.* at 5.

Plaintiffs also claim that they began receiving calls in 2011 from DRS, a third party collection agency, "regarding the Beneficial account." *Id.* DRS represented to Plaintiff Richard Koesler that he "could pay off his delinquent Beneficial mortgage account if he immediately paid the lump sum amount of $17,863.50." *Id.* After Plaintiff Richard Koesler's VA fiduciary assisted him in paying the lump sum of $17,863.50, DRS faxed him a payment receipt,

which Plaintiffs provide. *Id.* at 5, Ex. C. The DRS receipt, dated January 2011, states that the Beneficial account has been settled in full. *Id.* at Ex. C. Yet, Plaintiffs allege that "Defendant Beneficial commenced its collection actions against [them] without regard to [their] assertions and their documentation ... that they had paid the amount requested to Beneficial's representatives." *Id.* at 5–6.

Ultimately, Plaintiffs allege that they acted in reliance of Defendant Beneficial's agent's false representations that they could pay off their mortgage loan by paying $23,345.00 and $17,863.50. *Id.* at 5–6. Thus, the Court concludes that Plaintiffs have alleged sufficient facts to support their fraud claims against Defendant Beneficial.

Contrary to Defendant Beneficial's arguments that Plaintiffs failed to meet the heightened pleading standard of Rule 9, the Court holds that they have. *See* Def. Beneficial's Second Mot. 6–7. Plaintiffs have pleaded the who—Hudson and Keyse and DRS, on behalf of Defendant Beneficial; the what—informing Plaintiffs that their mortgage loan account could be settled by paying $23,345.00 and $17,863.50, when in reality payment of these amounts did not settle the account; the when— February 18, 2009 and January 26, 2011; the where and how—Plaintiffs received letters via mail and a fax in their Texas homes containing these allegedly false representations. *See* Am. Compl. 5–8, Exs. A, C.

█ The Defendants remaining arguments regarding Plaintiffs' fraud claims are not appropriate for disposition at this preliminary stage of the proceedings. First, Defendant Beneficial contends that

> Fraud also requires a showing of actual and *justifiable* reliance. Plaintiffs could not justifiably rely, as a matter of law, upon a third-party representation that a

payment of $17,863.50 to a third party in 2011 would settle Plaintiff Loan, when Plaintiffs contend they had already made approximately 34 monthly payments of $603.08, for a total of $20,504,712 on a $5,644 loan.

Def. Beneficial's Second Mot. 7.

Plaintiffs respond that their Amended Complaint clarifies that the "loan involved the refinancing of their entire mortgage loan"; consequently Plaintiffs have alleged that their new loan amount became $55,994.94 as a result of this refinancing. Second Resp. 7. Plaintiffs also contend that Defendant Caliber's Second Notice states that the amount due on the loan was $32,578.99. *See* Am. Compl. Ex. F. Hence, Plaintiffs argue that it is "not implausible that [they] could have relied on the representations of both collection agents that ... Defendant Beneficial would be willing to settle for a lump sum payment of $17,863.50." Second Resp. 7–8.

■ "Reliance is ordinarily a question of fact for the fact-finder" and "is not a proper matter for dismissal on the pleadings." *Celanese Corp. v. Coastal Water Auth.*, 475 F.Supp.2d 623, 637 (S.D. Tex. 2007) (citing *Jones v. Ray Ins. Agency*, 59 S.W.3d 739, 754 (Tex. App.–Corpus Christie 2001, pet. denied), 92 S.W.3d 530 (Tex. 2002) and *1001 McKinney Ltd. v. Credit Suisse First Bos. Mortg. Capital*, 192 S.W.3d 20, 30 (Tex. App.–Houston [14th Dist.], 2005, pet. denied) ("In the context of common law fraud, courts have uniformly treated the issue of justifiable reliance as a question for the factfinder .... The question of justifiable reliance depends heavily on the relationship between the parties and their relative sophistication.")); *see also In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 490 F.Supp.2d 784, 794–95 (S.D. Tex. 2007) (similarly holding that reliance is a question of fact).

Plaintiffs have alleged that they relied upon Defendant Beneficial's agents in making the payments to Hudson & Keyse and DRS Bonded. *See* Am. Compl. 7–8. Whether Plaintiffs' reliance was justifiable is a question for the factfinder. Therefore, the Court concludes that dismissal on this basis is not warranted.

Second, Defendant Beneficial also contests the agency relationship between itself and Hudson & Keyse and the agency relationship between itself and DRS Bonded. Def. Beneficial's Second Mot. 7–8 ("Plaintiffs' Amended Complaint makes the unsubstantiated allegation that 'DRS Bonded Collection Systems and Hudson & Keyse, LLC were collection agents for Defendant Beneficial ... as reflected in the correspondence sent to Plaintiffs."). The Court concludes that "[t]his factual contention is not germane at this stage in the face of the allegation of agency." *See Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 610 F.2d 371, 372 (5th Cir. 1980) (similarly holding that the plaintiff's allegations that the parties had an agency relationship was sufficient to survive a motion to dismiss); *See also Hildebrandt v. Indianapolis Life Ins. Co.*, No. 3:08–CV–1815–B, 2009 WL 854951, at *11 (N.D. Tex. Mar. 30, 2009) ("In light of these allegations of agency, the Court denies [the defendant's] motion to dismiss ....").

In sum, the Court holds that Plaintiffs have sufficiently stated a claim against Defendant Beneficial for common-law fraud.

### 2. The Caliber Defendants

■ Conversely, Plaintiffs have failed to allege that either Hudson & Keyse or DRS were agents of any of the Caliber Defendants. Instead, Plaintiffs allege that the Caliber Defendants are liable as successors of Defendant Beneficial. Second Resp. 7. Neither party has provided binding legal support regarding whether an assignee servicing company of a mortgage

loan can be held liable for the alleged Texas common-law fraud actions of the previous mortgage servicing company and assignor. It is generally recognized, however, that "if there has been no assumption of liability, the assignee is not liable to the debtor on account of liabilities incurred by the assignor in connection with the subject matter of the assignment." 6A C.J.S. *Assignments* § 118. "Hence, the assignee is ordinarily not liable on the contract assigned, or for fraud or breach of warranty by the assignor with the respect to the property for which the assigned chose was given." *Id.*

Here, Plaintiffs have failed to allege sufficient facts to demonstrate that Defendant Caliber is liable as assignee for the allegedly fraudulent conduct of Defendant Beneficial's alleged agents. Namely, Plaintiffs have failed to allege that any of the Caliber Defendants assumed all of the liabilities of Defendant Beneficial when Defendant Caliber became the servicer of the mortgage loan. Therefore, the Court will dismiss Plaintiffs common-law fraud claims against all of the Caliber Defendants.

## D. Breach of Fiduciary Duty

■ To state a claim for breach of fiduciary duty in Texas, a plaintiff must allege facts demonstrating that (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff, *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.–Dallas 2006, pet. denied). "Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).

■ A plaintiff may either establish a formal fiduciary relationship arising as a matter of law or an informal fiduciary relationship: "In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law." *Id.* In other contexts, the Texas Supreme Court has also recognized that an "informal fiduciary duty [can] aris[e] from 'a moral, social, domestic or purely personal relationship of trust and confidence.'" *Id.* at 331 (internal citations omitted). However, "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997). The Texas Supreme Court has been judicious about imposing such an informal fiduciary duty: "In order to give full force to contracts, we do not create such a relationship lightly. To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 331.

Accordingly, "Texas courts have held that the relationship between a borrower and lender is not a fiduciary one." *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 192 (S.D. Tex. 2007) (citing *1001 McKinney Ltd.*, 192 S.W.3d at 36 ("Generally, the relationship between a borrower and a lender is an arm's length business relationship in which both parties are looking out for their own interests.")).

■ Defendants correctly assert that Plaintiffs' claims fail as a matter of law because there was no fiduciary relationship, either between Defendant Beneficial and Plaintiffs, or any of the Caliber Defendants and Plaintiffs. *See* Caliber Defs.' Second Mot. 7–9; Def. Beneficial's Second Mot. 8–9. Plaintiffs have failed to allege facts sufficient to establish that their relationship with the Defendants was anything

more than an ordinary business relationship; they did not allege that they had a special relationship of trust prior to and apart from the mortgage loan agreement.

Plaintiffs concede that "typically a credit transaction has been considered an arm's length transaction in which no special duty is created." Second Resp. 8. Yet, Plaintiffs argue that a fiduciary duty arose under these special circumstances where Plaintiff Richard Koesler informed Defendant Beneficial that he and co-Plaintiff San Juana Koesler had in fact paid off their mortgage loan by paying a collection agency representing itself as Defendant Beneficiars agent. *Id.* Plaintiffs claim that Defendant Beneficial never responded to their assertions that they had paid Defendant Beneficiars agents and that "they were owed at least some kind of response from their mortgagee." *Id.* Plaintiffs cite to, *Smith v. Jenkins*, a Massachusetts district court case to support their position that a fiduciary relationship between parties to a business transaction may arise under certain circumstances. *See id.* (citing 626 F.Supp.2d 155, 171 (D. Mass. 2009)).

Plaintiffs' arguments fail for two reasons: first, the *Jenkins* court applied Massachusetts law regarding fiduciary relationships, and second, the circumstances in *Jenkins* can be distinguished from the facts in the instant case. *See id.* at 63. In *Jenkins*, the plaintiff suffered from several psychological disorders including schizophrenia, depression, posttraumatic stress disorder and mental retardation and was functionally illiterate. *Smith v. Jenkins*, 732 F.3d 51, 58 (1st Cir.2013). The plaintiff brought suit against a real estate company and another individual for breach of fiduciary duty when the real estate company's agent and this other individual duped him into closing on a home by falsely representing that he was making an investment. *Id.* at 60. The agent of the real estate company was present during the business transaction, actively misrepresented the nature of the transaction, and convinced the plaintiff that he did not have to read any of the documents he was signing because the agent repeatedly assured him that "they would take care of everything." *Id.* 63–64.

The court in *Jenkins* analyzed the plaintiff's breach-of-fiduciary-duty claims pursuant to Massachusetts law, which considers the following factors in determining whether a fiduciary duty arises from a business transaction: "defendant's knowledge of the plaintiff's reliance," "the relation of the parties," "the plaintiff's business capacity contrasted with that of the defendant" and "the readiness of the plaintiff to follow he defendant's guidance in complicated transactions." *Id.* at 63.

Here, Plaintiffs have alleged no actions on the part of any of the Defendants that would entitle Plaintiffs to believe that there was a special relationship of trust between Plaintiffs and Defendants as the defendant real estate company did in *Jenkins*. Moreover, Texas courts do not consider the factors set forth in *Jenkins* in determining whether a fiduciary duty arises. The Texas Supreme Court has made clear that it does not establish an informal fiduciary relationship lightly, and that business transactions do not give rise to a fiduciary relationship unless a plaintiff can prove a special relationship of trust prior to and apart from the agreement made the basis of the suit. *Meyer*, 167 S.W.3d at 331.

Therefore, Plaintiffs breach-of-fiduciary-duty claims fail as a matter of law under the facts alleged in Plaintiffs' Amended Complaint and these claims are dismissed with prejudice.

## V. CONCLUSION

Given the foregoing analysis, the Court concludes that all of Plaintiffs' FDCPA

claims against Defendant Beneficial should be dismissed with prejudice; Plaintiffs' TILA claims against Defendant Beneficial and all of the Caliber Defendants should be dismissed with prejudice; Plaintiffs' breach-of-fiduciary-duty claims against Defendant Beneficial and the Caliber Defendants should be dismissed with prejudice; and Plaintiffs common-law fraud claims against all of the Caliber Defendants should be dismissed. In sum, Plaintiffs' FDCPA claims against Defendant Caliber and common-law fraud claims against Defendant Beneficial remain.

Accordingly, **IT IS ORDERED** that the Caliber Defendants' "Motion to Dismiss and Brief in Support" (ECF No. 14) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Defendant Beneficial's "Motion to Dismiss Plaintiff's Complaint and its Memorandum of Law in Support of its Motion to Dismiss" (ECF No. 15) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the Caliber Defendants' "Motion to Dismiss Plaintiffs' Complaint Filed July 20, 2016, and Brief in Support" (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FINALLY ORDERED** that Defendant Beneficial's "Motion to Dismiss Plaintiff's Complaint and its Memorandum of Law in Support of its Motion to Dismiss" (ECF No. 21) is **GRANTED IN PART AND DENIED IN PART.**